<u>**NOT FOR PUBLICATION**</u>

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**

---

CLAUDE THOMAS,

        Plaintiff/
        Counterclaim-Defendant,

   v.

PHILIP KEOUGH, *et al.*,

        Defendants/
        Counterclaimants.

---

Case No. 2:20-cv-05758 (BRM) (JBC)

**OPINION**

---

**MARTINOTTI, DISTRICT JUDGE**[1]

      Before the Court are two motions. The first is Defendants/Counterclaimants Philip Keough ("Mr. Keough"), David Miller ("Mr. Miller"), Baruch Halpern ("Mr. Halpern"), YourLifeRx, Inc. ("YourLifeRx"), and Millers of Wyckoff, Inc.'s ("Millers of Wyckoff") (collectively, "Defendants") Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 99.) Plaintiff/Counterclaim-Defendant Claude Thomas ("Plaintiff") filed an opposition (ECF No. 104), and Defendants filed a reply (ECF No. 107). The second is Plaintiff's Cross-Motion for Summary Judgment pursuant to Federal Rule of Civil Procedure 56. (ECF No. 102.) Defendants filed an opposition (ECF No. 107),[2] and Plaintiff filed a reply (ECF No. 108). Having

---

[1] This matter was reassigned to this Court on November 29, 2023, upon the retirement of the Honorable Kevin McNulty, District Judge. (ECF No. 109.)

[2] Defendants submitted one consolidated brief in further support of their Motion for Summary Judgment and in opposition to Plaintiff's Cross-Motion for Summary Judgment.

reviewed the parties' submissions[3] filed in connection with the Motion and Cross-Motion, and

having declined to hold oral argument pursuant to Federal Rule of Civil Procedure 78(b), for the

reasons set forth below and for good cause having been shown, Defendants' Motion for Summary

Judgment (ECF No. 99) is **GRANTED** and Plaintiff's Cross-Motion for Summary Judgment (ECF

No. 102) is **GRANTED IN PART** and **DENIED IN PART**.

---

[3] Defendants framed both their briefing and proposed order in support of their Motion for Summary Judgment as seeking dismissal, with prejudice, of Plaintiff's Second Amended Complaint. (*See generally* ECF Nos. 99, 99-6.) Similarly, Plaintiff framed his briefing and proposed order in support of his Cross-Motion for Summary Judgment as seeking dismissal of Defendants' Counterclaims. (*See generally* ECF Nos. 102, 102-5.) There is an abundance of caselaw from the Third Circuit and the District of New Jersey which essentially provides that a district court shall enter judgment in favor of the party on the subject claims, rather than dismiss the claims subject of a motion for summary judgment. *See, e.g.*, *Cheminor Drugs, Ltd. v. Ethyl Corp.*, 168 F.3d 119, 121 n.2 (3d Cir. 1999) ("Because the grant of summary judgment and the dismissal of the complaint are inconsistent, we will disregard reference to the 'dismissal' of [plaintiff's] complaint and treat the record as a summary judgment record."); *see also Fanelli v. Centenary Coll.*, 112 F. App'x 210, 212 n.2 (3d. Cir. 2004) ("When a district court grants a motion for summary judgment, it should enter judgment for the prevailing party, not dismiss the complaint.") (citing *Cheminor Drugs*, 168 F.3d at 121 n.2); *Sconiers v. United States*, 896 F.3d 595, 596 n.2 (3d. Cir. 2018) (affirming grant of summary judgment in favor of defendants and disregarding lower court's order to dismiss plaintiff's claims with prejudice); *Revell v. Jersey City*, Civ. A. No. 06-32102009, 2009 WL 3152110, *1 n.2 (D.N.J. Sept. 28, 2009) ("The resolution of a motion for summary judgment does not lead to a dismissal of the complaint, only the grant or denial of summary judgment."); *Indus. Mar. Carriers* v. *Thomas Miller, Inc.*, Civ. A. No. 06-5625, 2009 WL 5216971, *1 n.1 (D.N.J. Dec. 29, 2009) (granting summary judgment in favor of defendant but disregarding defendant's request to dismiss plaintiff's amended complaint); *Bay Colony Condo. Assoc. v. Scottsdale Ins. Co.*, Civ. A. No. 11-4865, 2012 WL 6725824, *5 n.5 (D.N.J. Dec. 26, 2012) ("A grant of summary judgment on a claim and the dismissal of a claim are procedurally distinct."). Therefore, in addressing Defendants' Motion for Summary Judgment and Plaintiff's Cross-Motion for Summary Judgment, any requests for dismissal are construed as requesting judgment in favor of the movant.

# I.   BACKGROUND

## A.   Factual Background[4]

This is an employment discrimination matter involving Plaintiff's allegations that Defendants discriminated against him (1) on the basis of race/color and (2) on the basis of age—resulting in constructive discharge from his employment. (*See generally* ECF No. 79 (Second Am. Compl.).) Plaintiff also alleges he was subject to retaliation after objecting to a scheme of illegal kickbacks. (*Id.* ¶¶ 25–28.) Among other counterclaims, Defendants allege Plaintiff misappropriated trade secrets and engaged in unauthorized computer data access after he was no longer employed by YourLifeRx. (*See generally* ECF No. 82 (Answer and Countercls.).)

Plaintiff is a fifty-four-year-old male who identifies his race as African American. (ECF No. 104-2 (Pl.'s CMF in Opp'n of Mot. for Summ. J.) ¶ 1.) Plaintiff testified he began his employment with Millers of Wyckoff, a compounding and homecare pharmacy, as a pharmacy

---

[4] The parties submitted eight different statements setting forth and responding to the material facts. The following five are related to Defendants' Motion for Summary Judgment: (1) Defendants' Statement of Material Facts ("SMF") in Support of Motion for Summary Judgment (ECF No. 99-1); (2) Plaintiff's Counterstatement of Material Facts ("CMF") in Opposition to Motion for Summary Judgment (ECF No. 104-2); (3) Plaintiff's Response to Defendants' Statement of Material Facts (ECF No. 104-3); (4) Defendants' Response to Plaintiff's CMF (ECF No. 107-6); (5) Defendants' Reply to Plaintiff's Response to Defendants' SMF (ECF No. 107-7). The following three are related to Plaintiff's Cross-Motion for Summary Judgment: (1) Plaintiff's SMF in Support of Cross-Motion for Summary Judgment (ECF No. 102-3); (2) Defendants' CMF in Opposition to Plaintiff's Cross-Motion for Summary Judgment (ECF No. 107-5); (3) Plaintiff's Response to Defendants' CMF (ECF No. 108-1). There are inconsistencies throughout these eight different statements, most significantly, conflicting statements from the same party. In its best efforts to resolve these inconsistencies, the Court provides the following facts. Unless otherwise noted, the following facts are undisputed or were admitted by the opposing party in one of these statements.

technician in February 2001.[5] (ECF No. 99-1 (Defs.' SMF in Supp. of Mot. for Summ. J.) ¶ 11

(citing Claude Thomas Dep. 41:14–42:13).) Plaintiff was promoted several times during his tenure

with Millers of Wyckoff; Plaintiff's last promotion, prior to the sale of Millers of Wyckoff in 2019,

was to the Director of Marketing position at a base salary of $90,000.00. (ECF No. 99-1 ¶ 13

(citing Claude Thomas Dep. 44:4–15, 51:15–16).) In his position as Director of Marketing,

Plaintiff formulated pricing policies, generated lists of potential doctors that he would visit on sales

calls as well as a list of physicians that he developed after making sales calls and generating

business. (ECF No. 99-1 ¶ 17 (citing Claude Thomas Dep. 49:9–51:3).)

Mr. Miller was the owner and principal of Millers of Wyckoff until he sold it in January

2019. (ECF No. 104-2 ¶ 2; ECF No. 107-6 (Defs.' Resp. to Pl.'s CMF) ¶ 2).) Prior to the sale, Mr.

Keough,[6] a prospective buyer, was presented with complaints about Plaintiff from Plaintiff's co-

workers when inquiring whether Plaintiff should be retained by YourLifeRx. (ECF No. 99-1 ¶¶

---

[5] Plaintiff certifies he was employed by Millers of Wyckoff from 2000 until May 2019. (ECF No. 102-3 (Pl.'s SMF in Supp. of Cross-Mot. for Summ. J.) ¶ 1 (citing (ECF No. 102-1 (Certification of Claude Thomas ¶ 1)).) Further, Plaintiff asserts he was employed in the position of General Manager. (ECF No. 104-2 (Pl.'s CMF in Opp'n of Mot. for Summ. J.) ¶ 1 (citing (ECF No. 104-1 (Certification of Claude Thomas in Opp'n of Mot. for Summ. J.) ¶ 1 )).) However, Plaintiff ultimately admitted the contents of his testimony and Defendants' SMF, that he began his employment with Millers of Wyckoff as a pharmacy technician in February 2001. (ECF No. 104-3 (Pl.'s Resp. to Defs.' SMF) ¶ 4).) In the interest of judicial economy, the Court will not list other inconsistencies of the eight provided statements.

[6] Plaintiff certifies both Mr. Keough and Mr. Halpern are the principals in YourLifeRx. (ECF No. 104-2 ¶ 2 (citing ECF No. 104-1 (Certification of Claude Thomas in Opp'n of Mot. for Summ. J. ¶ 2)).) However, both Mr. Keough and Mr. Halpern testified Mr. Halpern is currently the sole shareholder of YourLifeRx. (ECF No. 107-6 ¶ 2 (citing Philip Keough Dep. 16:11–17; Baruch Halpern Dep. 12:20–13:11).) Based on Mr. Halpern's testimony, the Court will make the logical inference that Mr. Keough was acting as a prospective buyer in January 2019 because both he and Mr. Halpern owned shares in YourLifeRx at the time. (Baruch Halpern Dep. 13:9–12.) The parties do not provide further information as to either Mr. Keough or Mr. Halpern's exact position and/or role in YourLifeRx or Millers of Wyckoff during the relevant events.

22–26 (citing Certification of John K. Bennett, Esq. ("Bennett Cert."), Ex. 10, Sept. 3, 2018 E-mail Chain; Claude Thomas Dep. 56:11–67:23).) In December 2018, Plaintiff sent correspondence to Mr. Keough and Mr. Halpern stating the reasons why Plaintiff believed he should be considered for a new role in YourLifeRx. (ECF No. 99-1 ¶ 28 (citing Bennett Cert., Ex. 12, Dec. 2018 Correspondence; Claude Thomas Dep. 73:2–76:22).)

On December 29, 2018, Mr. Miller sent an e-mail to several Millers of Wyckoff employes, including Plaintiff, explaining the need to make the company profitable because Mr. Keough's investors were demanding a twenty-five percent reduction in staffing costs. (ECF No. 99-1 ¶ 30 (citing Claude Thomas Dep. 76:23–79:21).) On that same day, Plaintiff replied to Mr. Miller's e-mail with an agenda plan that would purportedly save at least $300,000 in operation costs by reducing employee hours and salaries, among other proposals. (ECF No. 99-1 ¶¶ 31–32 (citing Bennett Cert., Ex. 11, Dec. 29, 2018 Correspondence and Agenda Plan; Claude Thomas Dep. 80:5–82:25).)

On January 3, 2019, Plaintiff sent an e-mail entitled "Uma here" to his personal e-mail which attached Millers of Wyckoff's doctors list.[7] (ECF No. 107-5 (Defs.' CMF in Opp'n of Mot. for Summ. J.) ¶ 10 (citing Bennett Suppl. Cert., Ex. 7, Jan. 3, 2019 Correspondence).) Plaintiff testified he could not recall the reason he sent the doctor's list to his personal e-mail address and/or the signification of the caption "Uma here." (ECF No. 107-5 ¶ 11 (citing Claude Thomas Dep. 170:17–171:13).)

On or about January 27, 2019, Mr. Miller sold Millers of Wyckoff to Mr. Halpern, which

---

[7] Uma Ramasamy ("Ms. Ramasamy") worked at Millers of Wyckoff as a pharmacologist prior to and after its sale; Uma now works at Medicos Pharmacy ("Medicos") with Plaintiff. (ECF No. 107-5 ¶¶ 36–37.)

is now being operated as a YourLifeRx company under the same name (Millers of Wyckoff). (ECF No. 99-1 ¶¶ 3, 33 (citing David Miller Dep. 13:8–12; Claude Thomas Dep. 85:16–18).) Following the sale, Plaintiff was informed by Mr. Keough that he would continue his employment with YourLifeRx as Front Store Manager. (ECF No. 99-1 ¶ 34 (citing Claude Thomas Dep. 85:19–87:10; Bennett Cert., Ex. 13, Jan. 28, 2019 Memorandum from Mr. Keough).) In the position of Front Store Manager, Plaintiff was responsible for overseeing all the non-pharmacy teams and leading sales efforts. (*Id.*) Due to these new responsibilities, Plaintiff "was in the store 100 percent" of the time as Mr. Keough told Plaintiff to stop his marketing efforts and focus on sales in the store. (ECF No. 99-1 ¶ 36 (citing Claude Thomas Dep. 87:3–10, 96:10–97:6).)

After the sale, Mr. Miller was also employed by YourLifeRx as the Pharmacist-In-Charge of Millers of Wyckoff. (ECF No. 104-2 ¶ 2 (citing ECF No. 104-1 ¶ 2); Bennett Cert., Ex. 13, Jan. 28, 2019 Memorandum from Mr. Keough).) On February 7, 2019, Mr. Miller e-mailed Mr. Halpern and Mr. Keough to inform them of "dire" situations at the store including a significant decline in prescription sales numbers which could be solved by Plaintiff conducting "his most important role in marketing the company and specifically compounding" because he was an effective salesman. (ECF No. 99-1 ¶ 37 (citing Claude Thomas Dep. 60:3–61:4, 97:16–98:2, 111:9–12; Bennett Cert., Ex. 14, Feb. 7, 2019 Correspondence).)[8]

Plaintiff began to have conflicts with employees in the store starting in March 2019. (ECF

---

[8] In his response to Defendants' SMF, Plaintiff "neither admits nor denies the allegations of ¶ 37, and leaves Defendants to their proofs. He does say that even if the decision to put him out of the store had a business purpose, it also had a racial component." (ECF No. 104-3 ¶ 8.) However, Plaintiff does not cite to any support for this contention. The Court notes Plaintiff frequently admits that statements were made but denies the truth of those statements. Unless relevant to the outcome of the decision, and because the Court is citing statements from the record, the Court will not point out each objection.

No. 99-1 ¶ 39 (citing Claude Thomas Dep. 98:3–7).) On March 28, 2019, Plaintiff received an e-mail from his coworker, Kematta Trahan ("Ms. Trahan"), wherein Ms. Trahan complained of Plaintiff's harassment and bullying. (ECF No. 99-1 ¶ 40 (citing Claude Thomas Dep. 100:2–23; Bennett Cert., Ex. 15, Mar. 28, 2019 E-Mail from Ms. Trahan).)

In early April 2019, Plaintiff sent an e-mail to Mr. Keough, Mr. Miller, and Mr. Halpern concerning an issue of alleged kickbacks to a sales representative, Zahid Qureshi ("Mr. Qureshi"), for sales of certain compound prescriptions.[9] (ECF No. 99-1 ¶ 41 (citing Bennett Cert., Ex. 16, Apr. 2019 E-Mail Chain).) In response to Plaintiff's e-mail, Mr. Miller stated "Zahid was a legitimate 1099 independent contractor." (ECF No. 99-1 ¶ 43 (citing Bennett Cert., Ex. 16, Apr. 2019 E-Mail Chain).) Mr. Halpern also responded by stating "there will be zero tolerance for anything that even remotely looks or feels unethical or could be construed as a kickback. We will only run our business with only the highest levels of integrity and ethics. Anyone found violating this will not work for us." (ECF No. 99-1 ¶ 44 (citing Bennett Cert., Ex. 16, Apr. 2019 E-Mail Chain).)

On May 16, 2019, Mr. Keough notified Plaintiff about the restructuring of YourLifeRx and offered Plaintiff the position of Director of Sales and Marketing "to capitalize on [his] selling skill." (ECF No. 99-1 ¶¶ 46–47 (citing Bennett Cert., Ex. 18, May 2019 E-mail Chain).) This position, contingent on the signing of a non-compete agreement, would include a base salary of $60,000.00, an additional payment of "6.5% commission on all new business tied directly to new doctors" that Plaintiff brought in with no cap on the amount of the commission, and a $500.00 a month car allowance to cover transportation. (ECF No. 99-1 ¶¶ 46–48 (citing May 2019 E-mail

---

[9] Defendants assert Plaintiff and Ms. Ramasamy established an agreement in 2014 to pay Mr. Qureshi "15% of the sales that he brings," and to report his sales commissions on an IRS Form 1099. (ECF No. 99-1 ¶ 45 (citing Bennett Cert., Ex. 17, 2014 and 2015 e-mails re: Zahid Qureshi).)

Chain; Claude Thomas Dep. 117:15–119:10).)

On May 17, 2019, Plaintiff received an e-mail from Sean Bucher ("Mr. Bucher"), a co-worker, with a link to YourLifeRx's compounding price list. (ECF No. 107-5 ¶ 20 (citing Claude Thomas Dep. 119:20–120:2; Bennett Suppl. Cert., Ex. 1, May 17, 2019 Correspondence from Mr. Bucher).) At his deposition, Plaintiff testified he could not recall if he asked Mr. Bucher to send him the compounding price list. (ECF No. 107-5 ¶ 21 (citing Claude Thomas Dep. 119:20–121:7).) Four minutes after receiving the compounding price list from Mr. Bucher, Plaintiff received an e-mail entitled "PRICE LIST," from Lynn Gruenberg ("Ms. Gruenberg"), another co-worker, which contained an attachment of a price list for erectile dysfunction ("ED") medication. (ECF No. 107-5 ¶ 22 (citing Claude Thomas Dep. 124:9–16; Bennett Suppl. Cert., Ex. 2, May 17, 2019 Correspondence from Ms. Gruenberg).) Plaintiff testified he could not recall whether he printed the compounding list and/or the ED price list. (ECF No. 107-5 ¶ 23 (citing Claude Thomas Dep. 123:17–18, 124:24–125:5).)

On May 19, 2019, Plaintiff responded to Mr. Keough's May 16, 2019 e-mail by stating the $30,000 salary decrease would be a "hardship on [his] family." (ECF No. 99-1 ¶ 49 (citing May 2019 E-mail Chain; Claude Thomas Dep. 117:15–119:10, 130:11–131:23).) Plaintiff presented a counterproposal in which he refused to sign the non-compete and requested a base salary of $75,000, a commission of 15% the first year, a commission of 2% the second year, and a commission of 1% thereafter. (*Id.*)

Thereafter, Mr. Keough responded to Plaintiff's counterproposal by stating YourLifeRx was "eliminating the [Front Manager] position to streamline the operations" and YourLifeRx "will always try to be fair when considering a job and its related compensation" but in order to negotiate Plaintiff's base salary and commission, Plaintiff must be willing to sign the non-compete

agreement. (ECF No. 99-1 ¶ 51 (citing May 2019 E-mail Chain; Claude Thomas Dep. 117:15–119:10).) On May 20, 2019, Plaintiff responded "I will not be able to sign this agreement due to dissolve in position and financial hardship on my family." (ECF No. 99-1 ¶ 52 (citing May 2019 E-mail Chain; Claude Thomas Dep. 141:10–142:13).) Plaintiff admitted that by sending this response, he was resigning from his employment with YourLifeRx. (ECF No. 99-1 ¶ 53 (citing Claude Thomas Dep. 141:10–142:13).)

Plaintiff raises allegations from his experiences with Mr. Keough in support of his claims.[10] (*See generally* ECF No. 104-2 (citing ECF No. 104-1).) As to the employment discrimination claims, Plaintiff alleges: Mr. Miller warned Plaintiff Mr. Keough had "Southern views"; Mr. Keough was not pleased to employ an African American manager; Mr. Keough told Mr. Miller to fire multiple employees because of their age; Mr. Keough threatened Plaintiff by telling him he would find a replacement employee; Mr. Keough told Plaintiff he "want[ed] to make the store younger, with employees and products"; Mr. Keough told him several times he intended to make the "workforce younger." (ECF No. 79 ¶¶ 8–14; ECF No. 104-2 ¶¶ 4–6, 8 (citing ECF No. 104-1 ¶¶ 4–9).) As to the retaliation claim, Plaintiff alleges Mr. Miller: would "recycle" the drugs customers placed in a drop box; returned medications which were not picked up by customers back to inventory without reversing insurance billing; asked Plaintiff to falsify refrigerator temperature logs; had non-pharmacy staff involved in filling prescriptions; would provide customers with additional pills before they were due for a refill; and engaged in "kickbacks" with a doctor's office. (ECF No. 79 ¶¶ 15–16; ECF No. 104-2 ¶¶ 12–14 (citing ECF No. 104-1 ¶¶ 12–14).) Although

---

[10] Based on a review of the Second Amended Complaint (ECF No. 79 ¶¶ 8–16), the Certification of Claude Thomas in Opposition to Defendants' Motion for Summary Judgment (ECF No. 104-1 ¶¶ 4–9, 12–14), and Plaintiff's CMF in Opposition of the Motion for Summary Judgment (ECF No. 104-2 ¶¶ 4–6, 8, 12–14), it is clear Plaintiff repeated, almost verbatim, the allegations contained in the Second Amended Complaint in both his own Certification and the CMF.

Plaintiff admitted he did not initially mention racism, discrimination, or a hostile work environment as reasons why he refused to sign the offer of employment (ECF No. 99-1 ¶ 54 (citing Claude Thomas Dep. 140:21–24)), Plaintiff asserts the offered position and salary decrease were because of racial discrimination and/or retaliation and he "felt compelled to resign because of the ageist and racially hostile environment that his bosses had created in the past several months." (ECF No. 104-2 ¶¶ 15–16 (citing ECF No. 104-1 ¶¶ 15).)

On August 23, 2019, Mr. Miller received an e-mail from a pharmacist at Jiffy Scripts Rx which stated the pharmacist found both Millers of Wyckoff and YourLifeRx's files on Jiffy Scripts Rx's database. (Bennett Suppl. Cert., Ex. 9, Aug. 23, 2019 Correspondence.) On that same day, Mr. Miller sent an e-mail to Mr. Halpern and Mr. Keough which stated:

> [The Jiffy Scripts Rx Pharmacist] told me that she and the new Pharmacists at Jiffy were looking at a computer in the lab and found things she knew were inappropriate. She showed me a photo she had taken of a screen which contained the spread sheet I had kept up at Millers for over 10 years showing the breakdown of sales by department and an analysis of trends. You have seen this spreadsheet as it was the sales report I gave to the accountant every month. The only other person who had this was Claude. I reviewed these numbers with him every month as he was the sales manager to point out where our sales had increased or declined to give us an idea of where to focus our sales efforts. It is apparent that he stole a copy of this report when he left and is sharing it with at least this one competitor. More disturbing is [the Jiffy Scripts Rx Pharmacist]'s revelation that she also saw a report showing all of our compound prices and PATIENT names and addresses. She did not take a photo of this because she was afraid of violating HIPAA. I told her that, since it was Millers [of Wyckoff] data she was not violating HIPAA and asked her to make a copy of this file for us so we can see what it is. So, now we know that Claude also stole patient information and price sheets and has given them to at least one competitor.

(*Id.*) Thereafter, on September 2, 2019, Plaintiff sent an e-mail to Robert Beson ("Mr. Beson") of Progurt, a probiotic manufacturer, which stated: "Millers [of Wyckoff] shouldn't be a distraction

to the potential at hand. Just my thoughts. Please let me know next steps, Uma awaits as well."[11] (ECF No. 107-5 ¶ 32 (citing Bennett Suppl. Cert., Ex. 10, Plaintiff's E-mails with Robert Beson).) As a result of this conduct, Millers of Wyckoff/YourLifeRx sent Plaintiff a letter demanding Plaintiff cease and desist disseminating confidential information (the "October 7, 2019 Cease and Desist Letter"). (ECF No. 107-5 ¶ 34 (citing Bennett Suppl. Cert., Ex. 11, October 7, 2019 Cease and Desist Letter).)

Despite receiving and understanding the October 7, 2019, Cease and Desist Letter,[12] Plaintiff sent a fax on October 23, 2019 (the "October 2019 Fax") to a physician's office on behalf of Plaintiff's current employer, Medicos. (ECF No. 107-5 ¶ 36 (citing Bennet Suppl. Cert. Ex. 12, October 2019 Fax Cover Sheet).) The October 2019 Fax: introduced Plaintiff and Ms. Ramasamy and stated "[d]ue to the sale of Millers we have now joined Medicos"; detailed Medicos's pricing on ED medication; and referenced a price list which was enclosed. (*Id.*) Syed Hussaini ("Mr. Hussaini"), a managing member of Medicos, testified Plaintiff created the price list referenced in the October 2019 Fax. (ECF No. 107-5 ¶ 38 (citing Syed Hussaini Dep. 114:8–116:4).)

Based on Plaintiff's alleged misconduct, Defendants assert Plaintiff is liable for damages because he utilized confidential, proprietary, and trade secret information to compete against Defendants resulting in Plaintiff breaching his confidentiality obligations. (*See generally* ECF No. 82 (Countercls.).) YourLifeRx utilized the same employee handbook as Millers of Wyckoff (the "Employee Handbook"), which notes YourLifeRx is committed to equal opportunity employment,

---

[11] Plaintiff admitted he did not produce the entire e-mail thread with Mr. Beson because Plaintiff had deleted portions. (ECF No. 107-5 ¶ 33 (citing Claude Thomas Dep. 162:19–164:1).)

[12] Plaintiff acknowledged he had received and understood the letter but stated he did not respond. (ECF No. 107-5 ¶ 35 (citing Claude Thomas Dep. 160:6–161:8).)

and strives to maintain an environment free of harassment, discrimination, and retaliatory conduct. (ECF No. 99-1 ¶ 4 (citing Bennett Cert., Ex. 5, the Employee Handbook).) YourLifeRx's employees are encouraged to raise concerns and make reports of discrimination and/or retaliation without fear of reprisal. (ECF No. 99-1 ¶ 5 (citing the Employee Handbook).)

The Employee Handbook also contains a confidentiality agreement that requires YourLifeRx's employees during employment and following the conclusion of employment "to hold in strictest confidence and not disclose Confidential Information." (ECF No. 99-1 ¶ 9 (citing Claude Thomas Dep. 94:9–96:5; Bennett Cert., Ex. 7, the Employee Handbook's Signature Page).) At his deposition, Plaintiff acknowledged he signed the Employee Handbook's signature page on February 19, 2019, thereby indicating that he received, read, and agreed to abide by all current and future policies contained in the Employee Handbook, including the Confidentiality Agreement. (ECF No. 99-1 ¶ 10 (citing Claude Thomas Dep. 94:9–96:5).)

**B.**     **Procedural History**

On May 11, 2020, Plaintiff filed the original Complaint. (ECF No. 1.) On August 3, 2020, Defendants filed their Answer to the original Complaint. (ECF No. 3.) On December 22, 2020, Plaintiff filed the Amended Complaint. (ECF No. 15.) On December 28, 2020, the Honorable James B. Clark, U.S.M.J. entered the Pretrial Scheduling Order which required the parties to "seek leave of the Court by way of a letter application" prior to filing a dispositive motion. (ECF No. 16.) Plaintiff filed a corrected Amended Complaint on January 26, 2021. (ECF No. 21.)

On February 15, 2021, Mr. Miller filed a Motion to Dismiss the Second and Fourth Counts of the Amended Complaint. (ECF No. 22.) The next day, Mr. Miller filed: a notice of withdrawal of the Motion to Dismiss (ECF No. 23); and a letter which acknowledged his failure to comply with the requirements of the Pretrial Scheduling Order and requested Judge Clark's permission to

refile the Motion to Dismiss. (ECF No. 24.) Also, on February 16, 2021, Mr. Halpern, Mr. Keough, and YourLifeRx (the "YourLifeRx Defendants") filed an Answer to the Amended Complaint and Counterclaims. (ECF No. 25 (Answer and Countercls.).)

On February 17, 2021, Judge Clark entered an Order allowing Mr. Miller to file his Motion to Dismiss. (ECF No. 26.) Thereafter, Mr. Miller refiled his Motion to Dismiss the Second and Fourth Counts of the Amended Complaint. (ECF No. 27.) On February 20, 2021, Plaintiff filed an Answer to the YourLifeRx Defendants' Counterclaims. (ECF No. 31.)

On February 22, 2021, Judge Clark entered an Order allowing Plaintiff to file a Cross-Motion seeking leave to amend the Amended Complaint in response to Mr. Miller's Motion to Dismiss. (ECF No. 32.) On February 28, 2021, Plaintiff filed: an Opposition to Mr. Miller's Motion to Dismiss (ECF No. 33); and a Cross-Motion seeking leave to file a Second Amended Complaint (ECF No. 34). On March 1, 2021, Plaintiff filed a corrected Cross-Motion. (ECF No. 35.) On March 22, 2021, Judge Allen entered a Consent Order which stayed and administratively terminated Mr. Miller's Motion to Dismiss and Plaintiff's Cross-Motion seeking leave to file a Second Amended Complaint. (ECF No. 41.) On April 21, 2021, Judge Allen entered another Consent Order restoring the aforementioned motions to the motion calendar. (ECF No. 45.)

On December 15, 2021, Judge Allen entered an Order: granting Plaintiff's unopposed Cross-Motion seeking leave to file a Second Amended Complaint; and terminating Mr. Miller's pending Motion to Dismiss as moot. (ECF No. 78.) On the same date, Plaintiff filed his Second Amended Complaint alleging violations of: Title VII of the Civil Rights Act of 1967 ("Title VII"), 42 U.S.C. § 2000e, *et seq.* (First Count); the New Jersey Law Against Discrimination ("NJLAD"), N.J. Stat. Ann. § 10:5-1, *et seq.* (Second Count); the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621, *et seq.* (Third Count); and the Conscientious Employee Protection Act ("CEPA"), N.J. Stat. Ann. § 34:19-1, *et seq.* (Fourth Count). (ECF No. 79.)

On January 12, 2022, Defendants filed their Answer and Counterclaims in response to Plaintiff's Second Amended Complaint. (ECF No. 82 (Answer and Countercls.).) Defendants raised ten counterclaims including: NJLAD claims brought in bad faith (First Counterclaim); frivolous complaint under N.J. Stat. Ann. § 2A:15-59.1 (Second Counterclaim); malicious abuse of legal process (Third Counterclaim); malicious prosecution (Fourth Counterclaim); conversion of property (Fifth Counterclaim); breach of confidentiality agreements (Sixth Counterclaim); trespass to property (Seventh Counterclaim); violation of the New Jersey Trade Secrets Act (the "NJTSA"), N.J. Stat. Ann. § 56:15-1, *et seq.* (Eighth Counterclaim); violation of the New Jersey Computer Related Offenses Act (the "NJCROA"), N.J. Stat. Ann. § 2A:38a-1, *et seq.* (Ninth Counterclaim); violation of the Computer Fraud and Abuse Act (the "CFAA"), 18 U.S.C. § 1030, *et seq.* (Tenth Counterclaim). (*Id.*)

Judge Allen conducted a settlement conference on February 9, 2023. (ECF No. 97.) Ultimately, settlement efforts were unsuccessful. On February 14, 2023, Judge Clark entered a Letter Order requiring "[a]ny motions for summary judgment [to] be filed by April 14, 2023." (ECF No. 98.)

On April 14, 2023, Defendants filed the pending Motion for Summary Judgment. (ECF No. 99.) Thereafter, Plaintiff filed a letter requesting additional time to file a Cross-Motion and an opposition to Defendants' Motion for Summary Judgment. (ECF No. 100.) On April 17, 2023, Judge Allen entered a Letter Order which granted Plaintiff's request and provided that "Plaintiff's Opposition shall be filed by May 15, 2023." (ECF No. 101.)

On May 15, 2023, Plaintiff filed a Cross-Motion seeking summary judgment on

Defendants' counterclaims (ECF No. 102) and an Opposition to Defendants' Motion for Summary Judgment (ECF No. 104). On the same date, Defendants filed a letter asserting Judge Allen's April 17, 2023 Letter Order did not provide Plaintiff with additional time to file his cross-motion thus Defendants requested Judge Allen strike Plaintiff's Cross-Motion. (ECF No. 103 at 1–2.) On May 16, 2023, Judge Allen entered a Letter Order denying Defendants' request to strike Plaintiff's Cross-Motion. (ECF No. 106.) On June 12, 2023, Defendants filed a brief both in further support of their Motion for Summary Judgment and in opposition to Plaintiff's Cross-Motion for Summary Judgment. (ECF No. 107.) On June 18, 2023, Plaintiff filed a reply in further support of his Cross-Motion for Summary Judgment. (ECF No. 108.)

On November 29, 2023, the matter was reassigned from the Honorable Kevin McNulty, U.S.D.J. to the undersigned. (ECF No. 109.)

## II.   LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "On motions for summary judgment, the movant shall furnish a statement which sets forth material facts as to which there does not exist a genuine issue, in separately numbered paragraphs citing to the affidavits and other documents submitted in support of the motion." L. Civ. R. 56.1(a). A party asserting a genuine dispute of material fact must support the assertion by either "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials" or "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). A factual dispute "is

genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party," and "is material only if it might affect the outcome of the suit under governing law." *Kaucher v. Cnty. of Bucks*, 455 F.3d 418, 423 (3d Cir. 2006) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "Unsupported allegations, subjective beliefs, or argument alone, however, cannot forestall summary judgment." *Read v. Profeta*, 397 F. Supp. 3d 597, 625 (D.N.J. 2019) (citations omitted). Irrelevant or unnecessary factual disputes will also not preclude a grant of summary judgment. *See Anderson*, 477 U.S. at 248. Moreover, "mere speculation does not create genuine issues of material fact." *Dellapenna v. Tredyffrin/Easttown Sch. Dist.*, 449 F. App'x 209, 215–16 (3d Cir. 2011) (citing *Robertson v. Allied Signal, Inc.*, 914 F.2d 360, 382 n.12 (3d Cir. 1990)).

The party moving for summary judgment has the initial burden of showing the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once a movant adequately supports its summary judgment motion, the burden shifts to the nonmovant to "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate specific facts showing that there is a genuine issue for trial." *Celotex Corp.*, 477 U.S. at 324. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150–51 (2000) (quoting *Anderson*, 477 U.S. at 255). In other words, in deciding a party's summary judgment motion, the court's role is not to evaluate the evidence and

decide the truth of the matter, but to determine whether there is a genuine issue for trial. *See Anderson*, 477 U.S. at 255. "Summary judgment is appropriate only when there are no genuine issues of material fact, drawing all justifiable inferences in favor of the nonmovant." *Adams v. Fayette Home Care & Hospice*, 452 F. App'x 137, 139 (3d Cir. 2011) (citing *Anderson,* 477 U.S. at 248, 255).

If the moving party bears the burden of proof at trial, summary judgment is not appropriate if the evidence is susceptible to different interpretations or inferences by the trier of fact. *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999); *see also id.* at 553 n.9 (noting "summary judgment is rarely granted in a plaintiff's favor in cases where the issue is a defendant's racial motivation, such as disparate treatment suits under Title VII or racial discrimination claims under 42 U.S.C. § 1981"). On the other hand, if the non-moving party bears the burden of proof at trial, "summary judgment is warranted if the nonmovant fails to 'make a showing sufficient to establish the existence of an element essential to [its] case.'" *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993) (alteration in original) (quoting *Celotex Corp.*, 477 U.S. at 322). A "genuine issue as to any material fact" cannot exist if a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex*, 477 U.S. at 322–23. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* at 323. A material fact raises a "genuine" dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Williams v. Borough of W. Chester*, 891 F.2d 458, 459 (3d Cir. 1989) (quoting *Anderson*, 477 U.S. at 248).

## III.   DECISION

Defendants filed a motion seeking summary judgment on the four counts of the Second Amended Complaint. (ECF Nos. 99, 99-6 (Defs.' Proposed Order).) Plaintiff filed a cross-motion seeking summary judgment on eight of the ten Counterclaims. (ECF Nos. 102, 102-5 (Pl.'s Proposed Order).) The Court addresses each in turn.[13]

### A.   Defendants' Motion for Summary Judgment

#### 1.   Summary Judgment in Favor of YourLifeRx and Millers of Wyckoff Is Warranted as to Plaintiff's Title VII Claim (First Count)

Title VII prohibits employment discrimination on the basis of race, color, religion, sex, or national origin. *Slagle v. Cnty. of Clarion*, 435 F.3d 262, 265 (3d Cir. 2006) (citing 42 U.S.C. § 2000e-2). "To prevail on a Title VII claim of discrimination or retaliation, a plaintiff must first establish a *prima facie* case." *Rhoden v. Childs. Hosp. of Pittsburgh of UPMC Health Sys.*, 749 F. App'x 86, 88 (3d Cir. 2018). A *prima facie* case of national origin or race discrimination requires a plaintiff to establish that: "(1) she is a member of a protected class; (2) she was qualified for her position; (3) she suffered an adverse employment action; and (4) the adverse employment action occurred under circumstances that give rise to an inference of unlawful discrimination." *Id.* (citations omitted).

"[N]ational origin and race are protected classes under Title VII[.]" *Santos v. Iron Mountain Film & Sound*, Civ. A. No. 12-04214, 2013 WL 6054832, at *4 (D.N.J. Nov. 14, 2013). Discrete acts of discrimination can include "termination, failure to promote, denial of transfer, or refusal to hire." *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 114 (2002). The Third Circuit has described an adverse employment action "as an action by an employer that is serious

---

[13] *See supra* footnote 3.

and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment." *Jones v. Se. Pa. Transp. Auth.*, 796 F.3d 323, 326 (3d Cir. 2015) (quoting *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004)). The Third Circuit has held "direct economic harm is an important indicator" of a "serious and tangible" adverse employment action. *Durham Life Ins. Co. v. Evans*, 166 F.3d 139, 153 (3d Cir. 1999). Further, an indirect economic harm may be deemed "a tangible adverse employment action" when "an employer's act substantially decreases an employee's earning potential." *Id.* (citing *Booker v. Budget Rent-A-Car Sys.*, 17 F. Supp. 2d 735 (M.D. Tenn. 1998)). A plaintiff can show circumstances giving rise to an inference of unlawful discrimination by either (1) introducing "evidence of comparators (i.e., similarly situated employees who (a) were not members of the same protected class and (b) were treated more favorably under similar circumstances)"; or (2) relying on "circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." *Greene v. Virgin Islands Water & Power Auth.*, 557 F. App'x 189, 195 (3d Cir. 2014).

The *McDonnell Douglas* burden-shifting framework applies to claims of discrimination under Title VII. *Sarullo v. U.S. Postal Serv.*, 352 F.3d 789, 797 (3d Cir. 2003) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)). This framework has three basic steps. First, the plaintiff must establish a *prima facie* case of discrimination by a preponderance of the evidence. *Sarullo*, 352 F.3d at 797 (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 506 (1993)). Second, if the plaintiff establishes a *prima facie* case of discrimination, then the burden shifts to the employer to articulate a legitimate, nondiscriminatory reason for its action or decision. *Sarullo*, 352 F.3d at 797 (quoting *McDonnell Douglas*, 411 U.S. at 802). The employer "satisfies its burden of production by introducing evidence which, [if] taken as true, would permit the conclusion that

there was a nondiscriminatory reason for the unfavorable employment decision." *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994) (citing *St. Mary's Honor Ctr.*, 509 U.S. at 509). "The employer need not prove that the tendered reason *actually* motivated its behavior, as throughout this burden-shifting paradigm the ultimate burden of proving intentional discrimination always rests with the plaintiff." *Id.* (citing *Tex. Dep't of Cmty. Affs. v. Burdine*, 450 U.S. 248, 253–54 (1981)). Third, if the employer meets this "relatively light burden," *Fuentes*, 32 F.3d at 763, then "the burden returns to the [plaintiff], who must show by a preponderance of the evidence that the employer's proffered reason is pretextual." *Anderson v. Boeing Co.*, 694 F. App'x 84, 86 (3d Cir. 2017) (citing *McDonnell*, 411 U.S. at 804). To show pretext, "a plaintiff must point to direct or circumstantial evidence 'from which a factfinder could reasonably either (1) disbelieve the employer's articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action.'" *Jackson v. Planco*, 431 F. App'x 161, 165 (3d Cir. 2011) (quoting *Fuentes*, 32 F.3d at 764). "An employer would be entitled to judgment as a matter of law if . . . the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination had occurred." *Sanderson Plumbing*, 530 U.S. at 143 (internal citations omitted).

If each party meets its burden at each stage of this framework, then summary judgment is inappropriate. *See Whiskin v. Potter*, 476 F.3d 180, 185 (3d Cir. 2007). But summary judgment may be appropriate if a party fails to meet its burden under this framework. *Dellapenna*, 449 F. App'x at 215–16.

Defendants assert they are entitled to summary judgment as to Plaintiff's claims because: there are no genuine issues of material fact as to Plaintiff's claims of discrimination and/or

retaliation. (ECF No. 99-2 at 4.) Defendants contend Plaintiff did not suffer an adverse employment action because Plaintiff voluntarily resigned.[14] (*Id.* at 4–6.) Further, Defendants argue Plaintiff's claims fail because he cannot establish he suffered an adverse employment action and/or the adverse employment action occurred under circumstances giving rise to an inference of discrimination. (*Id.* at 6.) Defendants assert Plaintiff was not constructively discharged because there was no hostile work environment present. (*Id.* at 6–9.) Defendants submit "[t]he fact that Plaintiff would have been just fine working for [YourLifeRx] and with Defendants Miller, Keough, and Halpern for more money prevents him from establishing an adverse employment action." (*Id.* at 9.)

In opposition, Plaintiff claims the adverse employment at issue is that he was constructively discharged due to feeling "compelled to resign because of the ageist and racially hostile environment." (ECF No. 79 ¶ 17; ECF No. 104 at 2; *see also* ECF No. 79 ¶¶ 19, 21, 23, 27; ECF No. 104 at 4–11.) Plaintiff contends the issue of whether Plaintiff was constructively discharged is not ripe for summary judgment and must be decided by a jury. (ECF No. 104 at 3–4.) Plaintiff argues he has established a *prima facie* case of racial discrimination. (*Id.* at 4–8.) Further, Plaintiff

---

[14] Plaintiff does not dispute his voluntary resignation. (ECF No. 99-1 ¶ 53 (citing Claude Thomas Dep. 141:10–142:13).) In their reply brief, Defendants further assert the intoxicating argument that Plaintiff's voluntary resignation precludes a finding of an adverse employment action. (ECF No. 107 at 5 (citing *Pa. State Pol. v. Suders*, 542 U.S. 129, 141–42 (2004); *Schofield v. Metro. Life Ins. Co.*, Civ. A. No. 03-0357, 2006 WL 2660704, at *8 (M.D. Pa. Sept. 15, 2006).) The cases that Defendants cite to are not completely analogous to this matter as neither involve similar factual circumstances where the employee was offered a position with a much lower salary. *See Pa. State Pol.*, 542 U.S. at 135–36; *Schofield*, 2006 WL 2660704, at *1–4. Given the Third Circuit's holding in *Durham Life Ins.*, the Court notes an argument certainly could have been made by Plaintiff that he suffered an adverse employment action when YourLifeRx and Millers of Wyckoff made an employment offer to Plaintiff which initially represented a $30,000.00 salary decrease resulting in "direct economic harm" to him. 166 F.3d at 153. However, Plaintiff did not raise this argument. (*See generally* ECF No. 104.) Accordingly, the Court will address Plaintiff's assertions that he suffered an adverse employment in the form of constructive discharge. (ECF No. 79 ¶¶ 17, 19, 21, 23, 27; ECF No. 104 at 2, 4–11.)

submits he has provided sufficient evidence to support his claims of constructive discharge. (*Id.* at 8–9.)

In reply, Defendants assert Plaintiff fails to cite to any factual support for his allegations. (ECF No. 107 at 1.) Defendants note Plaintiff, in opposition to their motion for summary judgment, make "references to a conclusory, self-serving certification that merely echoes his Second Amended Complaint." (*Id.*) Defendants argue Plaintiff's conclusory, self-serving statements cannot defeat their motion for summary judgment. (*Id.* at 3–4.) Defendants reiterate Plaintiff cannot establish a *prima facie* case of discrimination. (*Id.* at 4–9.)

Under the *McDonnell Douglas* framework, the Court first looks to whether Plaintiff has established a *prima facie* case. Here, it is undisputed Plaintiff satisfies the first two factors for establishing a *prima facie* case of race discrimination because: Plaintiff identifies his race as African American (ECF No. 104-2 ¶ 1); and Plaintiff was qualified for his employment as he was a skilled salesman (ECF No. 99-1 ¶¶ 28, 37, 46–47.) In the First Count of the Second Amended Complaint, Plaintiff asserts he was constructively discharged by YourLifeRx and Millers of Wyckoff in violation of Title VII. (ECF No. 79 ¶¶ 19–20.) Accordingly, the Court turns its attention to Plaintiff's argument he suffered an adverse employment action because he was constructively discharged and whether the constructive discharge "occurred under circumstances that give rise to an inference of unlawful discrimination." *Rhoden*, 749 F. App'x at 88.

"A constructive discharge constitutes an 'adverse employment action' for purposes of Title VII." *Lombard v. N.J. Dep't of Transp.*, Civ. A. No. 18-01319, 2018 WL 5617553, at *7 (D.N.J. Oct. 30, 2018) (internal citation omitted). "The constructive-discharge doctrine contemplates a situation in which an employer discriminates against an employee to the point such that his working conditions become so intolerable that a reasonable person in the employee's position

would have felt compelled to resign." *Green v. Brennan*, 578 U.S. 547, 555 (2016) (internal citation and quotations omitted). Title VII treats a resignation under these circumstances "as tantamount to an actual discharge." *Id.* "Intolerability . . . is assessed by the objective standard of whether a 'reasonable person' in the employee's position would have felt compelled to resign— that is, whether he would have had no choice but to resign." *Tanganelli v. Talbots, Inc.*, 169 F. App'x 124, 127 (3d Cir. 2006) (citing *Connors v. Chrysler Fin. Corp.*, 160 F.3d 971, 976 (3d Cir. 1998)).

Here, the Court finds Plaintiff's allegations are insufficient to satisfy the third and fourth factors. The basis of Plaintiff's employment discrimination claims are Plaintiff's allegations of Mr. Keough's actions and statements. (ECF No. 79 ¶¶ 8–14; ECF No. 104-2 ¶¶ 4–6, 8 (citing ECF No. 104-1 ¶¶ 4–9).) As noted above, *supra* I.A.n.5, Plaintiff copied large portions of the allegations from his Second Amended Complaint and used them in his Certification in Opposition to Defendants' Motion for Summary Judgment. (*See* ECF No. 79 ¶¶ 8–16; ECF No. 104-1 ¶¶ 4–9, 12–14.) The Court finds Plaintiff's allegations are not sufficient evidence to establish constructive discharge. *See Gonzalez v. Sec'y of Dep't of Homeland Sec.*, 678 F.3d 254, 263 (3d Cir. 2012) ("[C]onclusory, self-serving affidavits are insufficient to withstand a motion for summary judgment."); *Jiminez v. All Am. Rathskeller, Inc.*, 503 F.3d 247, 251–55 (3d Cir. 2007) (holding plaintiff's self-serving assertions were insufficient to create question of material fact to defeat summary judgment).

Even if these allegations were adequately supported, the Court finds Defendants are entitled to summary judgment. A reasonable factfinder could not find Plaintiff's working conditions were so  "intolerabl[e]" such that Plaintiff "had no choice but to resign," *Tanganelli*, 169 F. App'x at 127, because Plaintiff voluntarily resigned (Claude Thomas Dep. 141:10–142:13).

Indeed, Plaintiff initially did not mention discrimination was part of the reason he refused to take the offered position. (*Id.* 140:21–24.) Further, the Court notes Plaintiff presented a counterproposal to Mr. Keough consisting of a higher salary and commission as well as no non-compete agreement. (*Id.* 130:11–131:23.) Therefore, if Plaintiff was potentially willing to remain employed for the right compensation, the Court finds Plaintiff's conditions were not sufficiently intolerable to result in constructive discharge.

Based on the foregoing, the Court also finds Plaintiff has failed to present "circumstantial evidence that otherwise shows a causal nexus between his membership in a protected class and the adverse employment action." *Greene*, 557 F. App'x at 195. The allegations cited by Plaintiff in support of his claims are insufficient to raise a genuine issue of material fact because Plaintiff has not shown his race influenced YourLifeRx and Millers of Wyckoff's decision to offer him another position. *Jasmin v. N.J. Econ. Development Auth.*, Civ. A. No. 16-1002, 2020 WL 3411171, at *8 (D.N.J. June 22, 2020) (providing that where there is no evidence of factual circumstances surrounding the termination, or of the role race played in them, plaintiff's Title VII claim would fail); *Sagun v. Delta Air Lines, Inc.*, Civ. A. No. 168881, 2019 WL 1961330, at *4 (D.N.J. May 2, 2019) (holding that where there was no evidence to suggest plaintiff's race had any bearing on the alleged unfair distribution of work, plaintiff's claim would not survive the motion for summary judgment).

Even assuming, *arguendo*, Plaintiff's allegations substantiated and established a *prima facie* case of discrimination, the Court finds YourLifeRx and Millers of Wyckoff have articulated a legitimate, nondiscriminatory reason for their actions in restructuring and offering Plaintiff the position of Director of Sales and Marketing. Defendants assert there was a legitimate, non-retaliatory reason for their decision to offer Plaintiff the position of Director of Sales and

Marketing and the accompanying salary decrease. (ECF No. 99-2 at 10–13.) YourLifeRx and Millers of Wyckoff have met this "relatively light burden," *Fuentes*, 32 F.3d at 763, by articulating the following: Mr. Miller e-mailed Mr. Halpern and Mr. Keough regarding "dire" situations at the store including a significant decline in prescription sales numbers which could be solved by Plaintiff conducting "his most important role in marketing the company and specifically compounding" because he was an effective salesman (ECF No. 99-1 ¶ 37 (citing Claude Thomas Dep. 60:3–61:4, 97:16–98:2, 111:9–12; February 7, 2019 Correspondence)); YourLifeRx "eliminat[ed] the [Front Manager] position to streamline [] operations" to address the "dire" situations (ECF No. 99-1 ¶ 51 (citing May 2019 E-mail Chain; Claude Thomas Dep. 117:15–119:10)); and Keough offered Plaintiff the position of Director of Sales and Marketing with "6.5% commission on all new business tied directly to new doctors" that Plaintiff brought in with no cap on the amount of the commission in order to "capitalize on [his] selling skill" (ECF No. 99-1 ¶¶ 46–48 (citing Bennett Cert., Ex. 18, May 2019 E-mail Chain; Claude Thomas Dep. 117:15–119:10)). Although not completely relevant to this analysis, the Court also notes co-workers complained about Plaintiff's in-store management on multiple occasions. (ECF No. 99-1 ¶¶ 22–26 (citing Sept. 3, 2018 E-mail Chain; Claude Thomas Dep. 56:11–67:23); ECF No. 99-1 ¶ 40 (citing Mar. 28, 2019 E-Mail from Ms. Trahan; Claude Thomas Dep. 100:2–23).)

Continuing on with the *McDonnell Douglas* analysis, the Court finds Plaintiff has not set forth persuasive arguments as to the alleged pretextual nature of Defendants' reasoning for restructuring and offering Plaintiff the position of Director of Sales and Marketing. Defendants argue Plaintiff cannot establish pretext because their decision to restructure the business was legitimate and non-discriminatory. (ECF No. 99-2 at 11–13.) In opposition, Plaintiff asserts the issue of whether Defendants' reasons for the "demotion" were pretextual should be decided by a

jury. (ECF No. 104 at 4.) Plaintiff contends Defendants' motive for offering Plaintiff a position

with a lower salary was pretextual because the offer "followed his objections to racist remarks,

ageist remarks and his whistleblowing by, at the most, some five (5) months and the other extreme,

less than one month."[15] (*Id.* at 9.) Additionally, Plaintiff argues Defendants "cannot empirically

substantiate their claim of business necessity." (*Id.* at 10.) In reply, Defendants reiterate Plaintiff

cannot prove pretext because Plaintiff has failed to rebut Defendants' legitimate non-pretextual

reasons for its business decision. (ECF No. 107 at 8–9.)

"Pretext is not shown by evidence that the employer's decision was wrong or mistaken,

since the factual dispute at issue is whether discriminatory animus motivated the employer not

whether the employer is wise, shrewd, prudent, or competent." *Kautz v. Met-Pro Corp.*, 412 F.3d

463, 467 (3d Cir. 2005) (internal citation and quotations omitted). "The question is not whether

the employer made the best or even a sound business decision; it is whether the real reason is

discrimination." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1109 (3d Cir. 1997) (internal

citation and quotations omitted).

As held above, Plaintiff's allegations of racist remarks are insufficient circumstantial

evidence to defeat a motion for summary judgment. *See Gonzalez*, 678 F.3d at 263; *Jiminez*, 503

F.3d at 251–55. Even if racist remarks were made, Plaintiff has not demonstrated that

discrimination was the reason he was "demoted," therefore Plaintiff has failed to satisfy his burden

of establishing pretext. *See Keller*, 130 F.3d at 1109.

Further, it is somewhat perplexing for Plaintiff to contend the restructuring and

streamlining of YourLifeRx was pretextual when Plaintiff submitted an agenda plan that would

---

[15] The Court does not find Plaintiff's temporal proximity arguments persuasive. *See Flear v. Glacier Garlock Bearings*, 159 F. App'x 390, 393 (3d Cir. 2005) (finding no sufficient temporal connection between complaints and subsequent termination two months later).

have saved $300,000.00 in operation costs by reducing employee hours and salaries, among other proposals. (ECF No. 99-1 ¶¶ 31–32 (citing Bennett Cert., Ex. 11, December 29, 2018 Correspondence and Agenda Plan; Claude Thomas Dep. 80:5–82:25).) Therefore, the Court does not "(1) disbelieve [Defendants'] articulated legitimate reasons; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of [Defendants'] action.'" *Jackson*, 431 F. App'x at 165.

Accordingly, the Court finds summary judgment in favor of YourLifeRx and Millers of Wyckoff is warranted as to Plaintiff's Title VII Claim (First Count).

### 2. Summary Judgment in Favor of Defendants Is Warranted as to Plaintiff's NJLAD Claim (Second Count)

In the Second Count of the Second Amended Complaint, Plaintiff alleges Defendants violated the NJLAD. (ECF No. 79 ¶¶ 21–22.) Plaintiff alleges, in pertinent part:

> Plaintiff was constructively discharged by Defendants Halpern and Keough, who were aiding and abetting each other as well as Defendants Millers of Wyckoff and/or YourLifeRx because of his race and/or age. Defendant Miller also aided and abetted Defendant Keough in creating a working environment that was hostile to Plaintiff because of his race and age.

(*Id.* ¶ 21.)

Defendants contend "courts apply a similar analysis to discrimination claims brought pursuant to Title VII, the ADEA, and the [NJ]LAD." (ECF No. 99-2 at 5). In opposition, Plaintiff submits he has a presented a *prima facie* case of a hostile work environment. (ECF No. 104 at 11.) In reply, Defendants assert they are entitled to summary judgment because Plaintiff's hostile work environment claim fails since their alleged conduct was not sufficiently severe or pervasive. (ECF No. 107 at 14–19.)

27

The NJLAD makes it unlawful for an employer "to discriminate against [an employee] in compensation or in terms, conditions or privileges of employment." N.J. Stat. Ann. § 10:5-12(a). On the merits, "courts employ the same framework and standard of review when analyzing claims under Title VII and NJLAD." *Behrens v. Rutgers Univ.*, Civ. A. No. 94-358, 1996 WL 570989, at *4 (D.N.J. Mar. 29, 1996) (citations omitted); *see also Abramson v. William Paterson Coll.*, 260 F.3d 265, 282 n.13 (3d Cir. 2001) ("Under the NJLAD and Title VII, the analysis is essentially the same."); *Tourtellotte v. Eli Lilly & Co.*, 636 F. App'x 831, 842 (3d Cir. 2016) (The Third Circuit's "discrimination inquiry is the same for claims filed under Title VII and the NJLAD as the New Jersey statute borrows the federal standard set forth in *McDonnell Douglas*.") (citing *Armstrong v. Burdette Tomlin Mem'l Hosp.*, 438 F.3d 240, 249 (3d Cir. 2006)).

Accordingly, the Court will adopt the *McDonnell Douglas* burden-shifting framework from Section III.A.1, *supra*, for the Title VII claim in analyzing Plaintiff's NJLAD claim. As discussed, summary judgment on Plaintiff's Title VII claim (First Count) is warranted, and therefore the same conclusion applies to Plaintiff's NJLAD claim (Second Count) asserted against all Defendants.

However, as Plaintiff did not raise a claim of hostile work environment[16] in his Title VII claim (First Count), but did raise the claim in the NJLAD claim (Second Count) (ECF No. 79 ¶ 21), the Court will also address this argument. A *prima facie* showing of a hostile work

---

[16] The Court notes "[t]here are subtle but discernible differences between the standard for a hostile work environment and the standard for constructive discharge." *Shepherd v. Hunterdon Developmental Ctr.*, 803 A.2d 611, 627 (N.J. 2002). "[A] constructive discharge claim requires more egregious conduct than that sufficient for a hostile work environment claim." *Id.* at 628 (internal citation omitted). "[This] standard envisions a sense of outrageous, coercive and unconscionable requirements," *id.* (internal citation and quotations omitted), whereas "[t]he hostile work environment claim requires severe or pervasive conduct that objectively alters the conditions of employment and is hostile or abusive," *id.* at 627–28.

environment requires "discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Nat'l R.R. Passenger Corp.*, 536 U.S. at116 (internal citation and quotations omitted). "To determine whether an environment is hostile, a court must consider the totality of the circumstances, including 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Mandel v. M & Q Packaging Corp.*, 706 F.3d 157, 168 (3d Cir. 2013) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).

"[S]imple teasing, offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal citation and quotations omitted). Therefore, "[t]he mere utterance of an epithet, joke, or inappropriate taunt that may cause offense does not sufficiently affect the conditions of employment to implicate . . . liability." *Weston v. Pennsylvania*, 251 F.3d 420, 428 (3d Cir. 2001).

The Court finds Plaintiff's assertions related to the alleged hostile work environment (*see* ECF No. 79 ¶¶ 8–16; ECF No. 104-1 ¶¶ 4–9, 12–14) "are insufficient to withstand a motion for summary judgment." *Gonzalez*, 678 F.3d at 263. Even if Plaintiff's allegations were accepted as true, the Court finds these assertions are not "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment," *Nat'l R.R. Passenger Corp.*, 536 U.S. at 116, for the same reasoning as discussed in relation to Plaintiff's claim of constructive discharge, *supra*, III.A.1. A factfinder could not reasonably conclude that Plaintiff's work environment "permeated with discriminatory intimidation, ridicule, and insult." *Id.*

Additionally, Plaintiff alleges Mr. Miller, Mr. Halpern, and Mr. Keough are individually

liable under an aiding-and-abetting theory. (*See* ECF No. 79 ¶ 21.) Defendants assert Plaintiff's claim for individual liability as to Mr. Miller, Mr. Halpern, and Mr. Keough fails. (ECF No. 99-2 at 17–22.) Plaintiff does not address these arguments in his opposition. (*See generally* ECF No. 104.) Therefore, Defendants are entitled to judgment as a matter of law as Plaintiff abandoned these claims since he failed to substantively respond to Defendants' arguments. *See McCarthy v. Int'l Ass'n of Machinists & Aero. Workers*, 2021 WL 5766569, at *2 n.3 (3d Cir. Dec. 6, 2021) ("Plaintiffs abandoned their claims . . . by omitting any reference to them in their opposition to Defendant's motion for summary judgment."); *see also Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir. 1995) ("Grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned."); *Carroll v. Lancaster Cnty.*, 301 F. Supp. 3d 486, 511–12 (E.D. Pa. 2018) (same).

Assuming Plaintiff had addressed his claims of individual liability under an aiding-and-abetting theory, the Court notes the NJLAD makes it unlawful "[f]or any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under [the NJLAD], or to attempt to do so." N.J. Stat. Ann. § 10:5-12(e). Liability for aiding and abetting under the NJLAD has no counterpart in Title VII. *See Cortes v. Univ. of Med. & Dentistry*, 391 F. Supp. 2d 298, 314 (D.N.J. 2005) ("While the Third Circuit has clearly foreclosed any possibility of individual liability under Title VII, the NJLAD does contain a separate provision which expressly contemplates individual liability for those who 'aid or abet' an employer's unlawful employment actions." (citing *Hurley v. Atl. City Police Dep't*, 174 F.3d 95, 126 (3d Cir. 1999))). Therefore, Plaintiff's NJLAD aiding and abetting claims must be analyzed separately from Title VII's legal framework.

"The NJLAD does not provide for individual liability for aiding and abetting if the

employer is not found liable." *Tourtellotte*, 636 F. App'x at 856 (citing *Cicchetti v. Morris Cty. Sheriff's Off.*, 947 A.2d 626, 645 (N.J. 2008)); *see also Jackson v. Del. River & Bay Auth.*, Civ. A. No. 99-3185, 2001 WL 1689880, at *22 (D.N.J. Nov. 26, 2001) ("If the NJLAD does not apply to the employer [ ], then no individual aiding and abetting liability may be found."). Here, Plaintiff has a NJLAD claim against YourLifeRx and Millers of Wyckoff that has not survived Defendants' Motions for Summary Judgment for the reasons stated above. Therefore, Plaintiff is not allowed to pursue a NJLAD aiding and abetting claim against their employees.

Accordingly, the Court finds summary judgment in favor Defendants is warranted as to Plaintiff's NJLAD Claim (Second Count).

### 3.   Summary Judgment in Favor of YourLifeRx and Millers of Wyckoff Is Warranted as to Plaintiff's ADEA Claim (Third Count)

In the Third Count of the Second Amended Complaint, Plaintiff alleges he was constructively discharged by YourLifeRx and Millers of Wyckoff because of his age in violation of the ADEA. (ECF No. 79 ¶ 23–24.) The parties do not devote substantial briefing to this claim. (*See generally* ECF Nos. 99-2, 104, 107.)

The ADEA makes it unlawful for an employer to "fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1). It is also unlawful for the employer to "limit, segregate, or classify" employees in a way that would "deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his status as an employee, because of such individual's age." *Id.* § 623(a)(2); *O'Malley v. Fairleigh Dickinson Univ.*, Civ. A. No. 10-6193, 2014 WL 67280, at *8 (D.N.J. Jan. 7, 2014).

A claim for discrimination under the ADEA is evaluated by a three-step test. *See Smith v.*

*City of Allentown*, 589 F.3d 684, 689–91 (3d Cir. 2009). This test, developed in the Title VII context in *McDonnell Douglas*, requires the plaintiff to first demonstrate a *prima facie* case of discrimination. *Smith*, 589 F.3d at 689; *see McDonnell Douglas*, 411 U.S. 792. If shown, "the burden of production shifts to the employer to identify a legitimate non-discriminatory reason for the adverse employment action." *Smith*, 589 F.3d at 690 (3d Cir. 2009). "If the employer does so, the burden of production returns to the plaintiff to demonstrate that the employer's proffered rationale was a pretext for age discrimination." *Id.* The plaintiff always bears the burden of persuasion. *Id.* Further, part of the plaintiff's burden of persuasion involves proving "that age was the 'but-for' cause of the employer's adverse decision." *Gross v. FBL Fin. Servs.*, 557 U.S. 167, 176–77 (2009).

Accordingly, the Court will adopt the *McDonnell Douglas* burden-shifting framework from Section III.A.1, *supra*, for the Title VII claim in analyzing Plaintiff's ADEA claim. As discussed, summary judgment on Plaintiff's Title VII claim (First Count) in favor of Defendants is warranted therefore the same conclusion applies to Plaintiff's ADEA claim (Third Count) asserted against YourLifeRx and Millers of Wyckoff. Defendants' motion on Plaintiff's Count Three is granted.

### 4.  Summary Judgment in Favor of Defendants Is Warranted as to Plaintiff's CEPA Claim (Fourth Count)

In the Fourth Count of the Second Amended Complaint, Plaintiff alleges Defendants violated the CEPA when they constructively discharged him after he objected to illegal kickbacks. (ECF No. 79 ¶¶ 25–28.)

Defendants argue Plaintiff's CEPA claim fails because Plaintiff cannot establish "he complained about or objected to anything that he reasonably believed violated any law, rule, regulation or clear mandate of public policy." (ECF No. 99-2 at 14.) Defendants submit Mr.

Qureshi's alleged kickbacks were the only issue Plaintiff raised during his employment. (*Id.* at 15.) Further, Defendants contend the record evidence does not support the assertion that Plaintiff had a reasonable belief the sales representative relationship with Mr. Qureshi consisted of improper kickbacks because Plaintiff and Ms. Ramasamy were responsible for establishing this sales representative relationship consisting of 15% of the sales that he brings and reporting his sales commissions on an IRS Form 1099. (*Id.*) Defendants assert the circumstances leading to Plaintiff's "voluntary resignation" in May 2019 refute the contention that Plaintiff's resignation was influenced by Defendants' actions. (*Id.* at 15–16.)

In opposition, Plaintiff asserts summary judgment is not appropriate because a reasonable jury could find Plaintiff's "demotion" was retaliation for complaints about the kickback scheme. (ECF No. 104 at 4.) Additionally, Plaintiff argues he has established a *prima facie* case of CEPA retaliation. (*Id.* at 11–13.) Plaintiff contends there was a causal connection because there was temporal proximity between his complaints and the adverse employment action. (*Id.* at 12–13.)

In reply, Defendants reiterate Plaintiff's CEPA claim fails because the record evidence does not support the contention that Plaintiff had a reasonable belief the sales representative relationship with Mr. Qureshi was illegal. (ECF No. 107 at 11.) Defendants submit the circumstances leading up to Plaintiff's voluntary resignation rebut Plaintiff's CEPA claim. (*Id.* at 11–12.)

The CEPA was enacted "to protect and encourage employees to report illegal or unethical workplace activities and to discourage public and private sector employees from engaging" in such activity. *Abbamont v. Piscataway Twp. Bd. of Educ.*, 650 A.2d 958, 971 (N.J. 1994). To succeed on a CEPA claim, a plaintiff must prove four elements: (1) that the plaintiff reasonably believed the employer's conduct violated a law or regulation; (2) that the plaintiff performed "whistle-

blowing activity" as defined in the CEPA; (3) that an adverse employment action has been taken against him; and (4) that the whistle-blowing activity caused such adverse employment action. *See Kolb v. Burns*, 727 A.2d 525, 530 (N.J. Super. Ct. App. Div. 1999); *Dzwonar v. McDevitt*, 828 A.2d 893, 900 (N.J. 2003). The CEPA covers employee complaints about activities the employee reasonably believes are: (i) in violation of a specific statute or regulation; (ii) fraudulent or criminal; or (iii) incompatible with policies concerning public health, safety or welfare or the protection of the environment. *See Est. of Roach v. TRW, Inc.*, 754 A.2d 544, 550 (N.J. 2000). However, "CEPA does not require that the activity complained of . . . be an actual violation of a law or regulation, only that the employee 'reasonably believes' that to be the case." *Id.* at 552.

To establish the element of causation, a plaintiff must demonstrate that "a causal connection exists between the whistle-blowing activity and the adverse employment action." *Dzwonar*, 828 A.2d at 900. A plaintiff must show that the "retaliatory discrimination was more likely than not a determinative factor in the decision." *Donofry v. Autotote Sys., Inc.*, 795 A.2d 260, 271 (N.J. Super. Ct. App. Div. 2001) (citations omitted). Once a plaintiff has established a *prima facie* case under the CEPA, courts employ the burden-shifting analysis that is used in federal discrimination cases involving "pretext" claims. *Blackburn v. United Parcel Servs., Inc.*, 179 F.3d 81, 92 (3d Cir. 1999).

In the Second Amended Complaint, Plaintiff alleges Mr. Miller: would "recycle" the drugs customers placed in a drop box; returned medications which were not picked up by customers back to inventory without reversing insurance billing; asked Plaintiff to falsify refrigerator temperature logs; had non-pharmacy staff involved in filling prescriptions; would provide customers with additional pills before they were due for a refill; and engaged in "kickbacks" with a doctor's office. (ECF No. 79 ¶¶ 15–16; ECF No. 104-2 ¶¶ 12–14 (citing ECF No. 104-1 ¶¶ 12–14).) In his

opposition, Plaintiff relies solely on the kickback allegation to establish his CEPA claim. Therefore, the Court finds Plaintiff's other allegations and claims are abandoned. *See Carroll*, 301 F. Supp. 3d at 511–12 (finding a claim abandoned when not addressed in brief in opposition to summary judgment).

Even though the Court is not necessarily persuaded by Defendants' arguments on this claim[17] and there is evidence of Plaintiff reporting the issue of alleged kickbacks to Mr. Keough, Mr. Miller, and Mr. Halpern (ECF No. 99-1 ¶ 41 (citing Apr. 2019 E-Mail Chain)), the Court will again adopt the *McDonnell Douglas* burden-shifting framework from Section III.A.1, *supra*, for the Title VII claim in analyzing Plaintiff's CEPA claim. Defendants have satisfied their burden of articulating a legitimate reason for the alleged adverse employment action, *see supra*, III.A.1, whereas Plaintiff has not satisfied his burden of establishing that Defendants' "real reason" for the alleged retaliation, in the form of the alleged constructive discharge, was Plaintiff's objection to the alleged kickback scheme. *See Keller*, 130 F.3d at 1109. Therefore, summary judgment in Defendants' favor is warranted on Plaintiff's CEPA claim (Fourth Count).

---

[17] The Court does not agree with Defendants' assertion that Plaintiff was responsible for establishing the sales representative relationship with Mr. Qureshi therefore Plaintiff could not have a reasonable belief that the sales representative arrangement was illegal. (ECF No. 99-2 at 15; ECF No. 1-7 at 11.) Based on a detailed review of the e-mails provided, the Court notes Plaintiff did not send any of the subject e-mails stating Mr. Qureshi would receive "15% of the sales that he brings," and report his sales commissions on an IRS Form 1099, rather Ms. Ramasamy sent the e-mails and Plaintiff was merely included on the e-mail chain. (Bennett Cert., Ex. 17, 2014 and 2015 e-mails re: Zahid Qureshi.) It is a stretch to conclusively say Plaintiff established the agreement with Mr. Qureshi therefore he could not have a reasonable belief that the arrangement was illegal.

B.      **Plaintiff's Cross-Motion for Summary Judgment[18]**

1.      **Summary Judgment in Favor of Plaintiff on Defendants' Counterclaim for NJLAD Claims Brought in Bad Faith (First Counterclaim) Is Not Warranted**

Plaintiff submits Defendants' First Counterclaim is premature because there has not been an adjudication of Plaintiff's NJLAD claim. (ECF No. 102-4 at 2.) Specifically, Plaintiff asserts the Court has not decided whether Plaintiff's NJLAD claim lacked merit or was commenced for an illegitimate purpose. (*Id.*)

In opposition, Defendants assert Plaintiff's allegations are insufficient to preclude a finding of bad faith because Plaintiff has not presented evidence to support his NJLAD claim. (ECF No. 107 at 20.) Defendants submit there is a question of fact as to whether Plaintiff's NJLAD claim

---

[18] As Defendants note (ECF No. 107 at 19 n.7), Plaintiff's Cross-Motion does not seek summary judgment on either Defendants' fifth counterclaim for Conversion of Property or the sixth counterclaim for Breach of Confidentiality Agreements in his moving papers (*see generally* ECF Nos. 102-4, 108). Therefore, the Court does not address Defendants' claims for Conversion of Property (Fifth Counterclaim) and Breach of Confidentiality Agreements (Sixth Counterclaim). These Counterclaims remain active and pending. (ECF No. 82 (Countercls. ¶¶ 15–31).) It is clear to the Court that Plaintiff, in preparing his briefing, considered the YourLifeRx Defendant's Answer and Counterclaims to the Amended Complaint filed on February 16, 2021 (ECF No. 25) but not Defendants' Answer and Counterclaims to the Second Amended Complaint filed on January 12, 2022 (ECF No. 82). There are multiple inconsistencies with Plaintiff's arguments raised in his briefing and Defendants' Answer to the Second Amended Complaint. (*See generally* ECF Nos. 82, 102-4, 108.) At the risk of being superfluous, the Court will list these inconsistencies throughout the Opinion. For instance, the Court presumes Plaintiff did not address Defendants' claims for Conversion of Property (Fifth Counterclaim) and Breach of Confidentiality Agreements (Sixth Counterclaim) contained in the Answer to the Second Amended Complaint (ECF No. 82 (Countercls. ¶¶ 15–31)), because YourLifeRx Defendants' Answer to the Amended Complaint did not raise claims for Conversion of Property and/or Breach of Confidentiality Agreements (*see generally* ECF No. 25). Further, Plaintiff entitles "Point V" of his moving brief as "THERE IS NO FIFTH COUNT PLEADED." (ECF No. 102-4 at 5.) The YourLifeRx Defendants' Answer to the Amended Complaint did not contain a Fifth Counterclaim and skipped from the Fourth Counterclaim, a claim for Malicious Prosecution (ECF No. 25 (Countercls. ¶¶ 11–27)), to the Sixth Counterclaim, a claim for Trespass to Property (*id.* 28–30). Whereas Defendants' Answer to the Second Amended Complaint filed on January 12, 2022, did, in fact, raise a Fifth Counterclaim for Conversion of Property. (ECF No. 82 (Countercls. ¶¶ 15–27).)

was brought in bad faith because Plaintiff was willing to continue his employment with YourLifeRx as long as his salary did not decrease, and he was not required to sign a non-compete agreement. (*Id.* at 22.) In the alternative, Defendants request, if the Court were to grant summary judgment on the First and Fourth Counterclaims on the basis of them being untimely, then Defendants should be allowed to reinstate these causes of action if Defendants are deemed the prevailing party. (*Id.* at 20 n.8.)

In reply, Plaintiff reiterates Defendants' First Counterclaim is premature. (ECF No. 108 at 1.) Plaintiff contends N.J. Stat. Ann. § 10:5-27.1 allows the award of counsel fees to a prevailing Defendant in a NJLAD action, but only if the court determines the action was brought in "bad faith." (*Id.*)

As part of their Answer to the Second Amended Complaint, Defendants raise a counterclaim for attorneys' fees under a theory of NJLAD Claims Brought in Bad Faith. (ECF No. 82 (Countercls. ¶¶ 1–2).) Under the NJLAD, "the prevailing party may be awarded a reasonable attorney's fees as part of the cost, provided however, that no attorney's fees shall be awarded unless there is a determination that the charge was brought in bad faith." N.J. Stat. Ann. § 10:5-27.1. Black's Law Dictionary defines bad faith as "[d]ishonesty of belief, purpose, or motive." Black's Law Dictionary (11th ed. 2019).

The NJLAD does not expressly define bad faith and the Supreme Court of New Jersey has not "addressed the meaning of 'bad faith' for purposes of N.J. Stat. Ann. 10:5-27.1." *Michael v. Robert Wood Johnson Univ. Hosp.*, 940 A.2d 310, 313 (N.J. Super. Ct. App. Div. 2008). In a different context, the Supreme Court of New Jersey held "bad faith denotes a reckless disregard of purposeful obliviousness of the known facts." *N.J. Title Ins. v. Caputo*, 748 A.2d 507, 514 (N.J. 2000). "The award of attorneys' fees to a prevailing defendant is not routine and should only be

sparingly awarded." *Hurley v. Atl. City Police Dept.*, 933 F. Supp. 396, 427 (D.N.J. 1996) (citing *Quiroga v. Hasbro, Inc.*, 934 F.2d 497 (3d Cir. 1991)). A trial court's granting of summary judgment in favor of a defendant on a plaintiff's NJLAD claim does not necessarily entitle the defendant to attorney's fees. *See Mandel v. UBS/PaineWebber, Inc.*, 860 A.2d 945, 961–962 (N.J. Super. Ct. App. Div. 2004).

As discussed, *supra* III.A.2, the Court has held summary judgment in favor of Defendants is warranted as to Plaintiff's employment discrimination claim under the NJLAD. In opposition to Defendants' motion for summary judgment, Plaintiff did not provide further evidence of his allegations and instead relied almost entirely on allegations from his Second Amended Complaint. (*See* ECF No. 79 ¶¶ 8–16; ECF No. 104-1 ¶¶ 4–9, 12–14.) Further, Plaintiff's NJLAD claim was contradicted, at the outset, by his voluntary resignation, and apparent willingness to continue employment with YourLifeRx and Millers of Wyckoff as long as he was given appropriate compensation. (ECF No. 99-1 ¶¶ 49, 53)

Although it is not clear whether Defendants have satisfied their burden of establishing bad faith,[19] the Court finds the foregoing creates a genuine dispute as to whether Plaintiff brought his NJLAD claims in bad faith. Accordingly, the portion of Plaintiff's Cross-Motion seeking summary judgment on Defendants' First Counterclaim is denied.

---

[19] The Court notes Defendants, in the Counterstatement of Material Facts in Opposition to Plaintiff's Cross-Motion for Summary Judgment, raise the unsupported allegation that "Plaintiff, after recognizing that litigation was imminent due to his misappropriation and breach of his agreement and confidentiality obligations to Defendant[s], filed his Complaint." (ECF No. 107-5 ¶ 42.)

### 2. Summary Judgment in Favor of Plaintiff on Defendants' Counterclaim for Frivolous Complaint (Second Counterclaim) Is Not Warranted[20]

Plaintiff contends Defendants failed to show Plaintiff was acting in bad faith in filing this lawsuit because even if his allegations are insufficient to prevail, that does not entitle Defendants to damages under a frivolous complaint theory. (ECF No. 102-4 at 3–5.) In opposition, Defendants argue there is support in the record for Defendants' Frivolous Complaint counterclaim because Plaintiff admitted he did not initially state discrimination, retaliation, or a hostile work environment as one of the reasons for his voluntary resignation. (ECF No. 107 at 23.) In reply, Plaintiff argues an employee is not required to give his or her employer any reason as to why he or she feels resignation is the only viable option. (ECF No. 108 at 1.)

Defendants also raise a counterclaim alleging Plaintiff filed a frivolous complaint therefore Defendants are entitled to attorneys' fees pursuant to N.J. Stat. Ann. § 2A:15-59.1. (ECF No. 82 (Countercls. ¶¶ 3–6).) N.J. Stat. Ann. § 2A15-59.1 provides "[a] party who prevails in a civil action . . . may be awarded all reasonable litigation costs and reasonable attorney fees, if the judge finds at any time during the proceedings or upon judgment that a complaint, counterclaim, cross-claim or defense of the nonprevailing person was frivolous." N.J. Stat. Ann. § 2A15-59.1. A claim is frivolous, if the Court finds: "(1) [t]he complaint, counterclaim, cross-claim or defense was commenced, used or continued in bad faith, solely for the purpose of harassment, delay or malicious injury"; and/or "(2) [t]he nonprevailing party knew, or should have known, that the complaint, counterclaim, cross-claim or defense was without any reasonable basis in law or equity

---

[20] This Court has previously granted reasonable attorney's fees for the prevailing party in a Title VII claim pursuant to 42 U.S.C. § 2000e-5(k). *Prioli v. Cnty. of Ocean*, Civ. A. No. 18-cv-00256, 2021 WL 4473159, at *24–26 (D.N.J. Sept. 30, 2021) (holding prevailing defendants were entitled to reasonable attorney's fees because the plaintiff's claims against the individual defendants were without arguable legal basis). Here, Defendants do not seek attorney's fees pursuant to 42 U.S.C. § 2000e-5(k), but rather N.J. Stat. Ann. § 2A:15-59.1. The analysis is, however, nearly identical.

and could not be supported by a good faith argument for an extension, modification or reversal of existing law." N.J. Stat. Ann. § 2A15-59.1(b). Further, if a prevailing party's claim of frivolity "is based on the absence of 'a reasonable basis in law or equity' for the plaintiff's claim and the plaintiff is represented by an attorney, an award cannot be sustained if the 'plaintiff did not act in bad faith in asserting' or pursuing the claim." *Ferolito v. Park Hill Ass'n, Inc.*, 975 A.2d 473, 478 (N.J. Super. Ct. App. Div. 2009) (quoting *McKeown-Brand v. Trump Castle Hotel & Casino*, 626 A.2d 425, 426 (N.J. 1993)).

"The burden of proving that the non-prevailing party acted in bad faith is on the party who seeks fees and costs pursuant to N.J. Stat. Ann. § 2 A:15-59.1." *Ferolito*, 975 A.2d at 478 (internal citations and quotations omitted). This "[s]tatute is interpreted restrictively," *Bove v. AkPharma Inc.*, 213 A.3d 948, 964 (N.J. Super. Ct. App. Div. 2019) (internal citation omitted), because "the right of access to the court should not be unduly infringed upon, honest and creative advocacy should not be discouraged, and the salutary policy of the litigants bearing . . . their own litigation costs, should not be abandoned." *Gooch v. Choice Ent. Corp.*, 809 A.2d 154, 156 (N.J. Super. Ct. App. Div. 2002) (internal citation and quotations omitted).

Based on the reasoning provided above, *supra* III.B.1, the Court holds that although it is not clear whether Defendants have satisfied their burden under N.J. Stat. Ann. § 2A:15-59.1, the Court finds Defendants have created a genuine dispute as to whether "[t]he complaint . . . was commenced, used or continued in bad faith." N.J. Stat. Ann. § 2A15-59.1(b)(1). Therefore, the portion of Plaintiff's Cross-Motion seeking summary judgment on Defendants' Second Counterclaim is denied.

     **3.**     **Summary Judgment in Favor of Plaintiff on Defendants' Counterclaim for Malicious Abuse of Legal Process (Third Counterclaim) Is Warranted**

Plaintiff asserts summary judgment is warranted on Defendants' third counterclaim for malicious abuse of legal process because Defendants' basis for this claim is solely Plaintiff's commencement of this action. (ECF No. 102-4 at 5.) In opposition, Defendants assert Plaintiff's initiation and conduct throughout this lawsuit has constituted a malicious abuse of process because "Plaintiff initiated the civil action only after learning that Defendants intended to take legal action against him for misappropriating their confidential, proprietary, and trade secret information and breaching his agreement and confidentiality obligations to defendants." (ECF No. 107 at 24.) Further, Defendants contend "Plaintiff initiated this action, based on no evidence, with the hopes that Defendants would not pursue any civil claims against him and in doing so, triggered the inevitable 'chain of events' that results from the filing of a civil complaint; namely, the substantial legal fees stemming therefrom." (*Id.*) In reply, Plaintiff reiterates the commencement of this action is Defendants' sole basis for this counterclaim. (ECF No. 108 at 2.) Plaintiff further argues Defendants have not alleged all of the elements of a malicious abuse of legal process claim. (*Id.*)

"The tort for malicious abuse of process lies not for commencing an improper action, but for misusing or misapplying process after it is issued." *Hoffman v. Asseenontv.Com, Inc.*, 962 A.2d 532, 541 (N.J. Super. Ct. App. Div. 2009) (internal citation omitted). "Consequently, basic to the tort of malicious abuse of process is the requirement that the defendant perform further acts after issuance of process which represent the perversion or abuse of the legitimate purposes of that process." *Baglini v. Lauletta*, 768 A.2d 825, 832–33 (N.J. Super. Ct. App. Div. 2001 (internal citation and quotations omitted).

Defendants' allegations raised in the Third Counterclaim (ECF No. 82 (Countercls. ¶¶ 7–

41

10)) and arguments raised in opposition to Plaintiff's Cross-Motion for Summary Judgment (ECF No. 107 at 23–24) are predicated on Plaintiff's actions in "initiating" this action. Accordingly, by focusing on "not what prompted the suit but what action plaintiff engaged in after the commencement of the action," *Hoffman*, 962 A.2d at 541, the Court finds Defendants have failed to properly allege and/or argue their claim for malicious abuse of legal process. Accordingly, the portion of Plaintiff's Cross-Motion seeking summary judgment as to the Third Counterclaim is granted.

### 4.    The Court, *Sua Sponte*, Dismisses Defendants' Counterclaim for Malicious Prosecution (Fourth Counterclaim)

Plaintiff argues the Court should dismiss Defendants' fourth counterclaim for malicious prosecution because this counterclaim is mislabeled, does not allege a cause of action, and there is no evidence of any alleged misappropriation.[21] (ECF No. 102-4 at 5.) Defendants do not address Plaintiff's arguments. (*See generally* ECF No. 107.) Instead, as noted above, *supra* III.B.1, Defendants request that if the Court were to grant the portion of Plaintiff's Cross-Motion seeking summary judgment on their claim for Malicious Prosecution (Fourth Counterclaim) on the basis of it being untimely, then Defendants should be allowed to reinstate this cause of action if Defendants are deemed the prevailing party. (*Id.* at 20 n.8.)

Notwithstanding the parties' arguments, the Court, *sua sponte*, finds Defendants' Fourth Counterclaim for Malicious Prosecution fails. "Malicious prosecution provides a remedy for harm

---

[21] Point IV of Plaintiff's moving brief is entitled "DEFENDANTS' FOURTH COUNT IS MISLABELED AND DOES NOT ALLEGE ANY CAUSE OF ACTION." However, it was the YourLifeRx Defendants' Answer to the Amended Complaint which raised a mislabeled counterclaim for Malicious Prosecution alleging misappropriation of proprietary and confidential information. (ECF No. 25 (Countercls. ¶¶ 11–27).) Defendants' claim for Malicious Prosecution (Fourth Counterclaim) in their Answer to the Second Amended Complaint is not mislabeled. (ECF No. 82 (Countercls. ¶¶ 11–14).)

caused by the institution or continuation of a criminal action that is baseless." *LoBiondo v. Schwartz*, 970 A.2d 1007, 1022 (N.J. 2009) (citing *Earl v. Winne*, 101 A.2d 535 (N.J. 1953)). This is a civil matter therefore the Court finds dismissal of Defendants' Fourth Counterclaim is warranted.[22] Therefore, the Court denies, as moot, the portion of Plaintiff's Cross-Motion seeking summary judgment on Defendants' Fourth Counterclaim.

### 5. Summary Judgment in Favor of Plaintiff on Defendants' Counterclaim for Trespass to Property (Seventh Counterclaim) Is Warranted[23]

Plaintiff asserts summary judgment on the Seventh Counterclaim is warranted because Defendants have not identified any property that Plaintiff absconded or destroyed. (ECF No. 102-4 at 6.) In opposition, Defendants argue there are genuine issues of material fact as to Defendants' claim for Trespass to Property because the record evidence demonstrates Plaintiff obtained Defendants' confidential and proprietary information to compete directly against Defendants.

---

[22] It is entirely possible Defendant mislabeled their claim for Malicious Prosecution, albeit for different reasons than Plaintiff asserts. To the extent Plaintiff argues the claim was mislabeled, that argument is moot in light of the Court's *sua sponte* dismissal. The Court notes there is a third related action to malicious prosecution and malicious abuse of process, referred to as "[m]alicious use of process [which] is essentially the analog used when the offending action in question is civil rather than criminal." *LoBiondo*, 970 A.2d at 1022 (internal citations omitted). The Supreme Court of New Jersey has recognized these three, distinct torts as "a group of closely related torts that, although ancient in origins, are treated with great caution because of their capacity to chill resort to our courts by persons who believe that they have a criminal complaint or civil complaint against another." *Id.* Applying this restraint, the Court finds, even if Defendants had properly alleged a claim for malicious use of process instead of malicious prosecution, it is likely summary judgment would have been warranted.

[23] "Point VI" of Plaintiff's moving brief is entitled "DEFENDANTS HAVE FAILED TO PRODUCE ANY EVIDENCE TO SUPPORT THE SIXTH COUNT." (ECF No. 102-4 at 6.) Similarly, "Point VI" of Plaintiff's reply brief is entitled "THE SIXTH COUNT MUST BE DISMISSED." (ECF No. 108 at 3.) In these portions of Plaintiff's briefs, Plaintiff addresses Defendants' counterclaim for Trespass to Property which is actually Defendants' Seventh Counterclaim. (ECF No. 82 (Countercls. ¶¶ 32–34).) In an effort to continue listing inconsistencies, the Court notes the YourLifeRx Defendants' *Sixth* Counterclaim raised, in their Answer to the Amended Complaint, was Trespass to Property. (ECF No. 25 (Countercls. ¶¶ 28–30).)

(ECF No. 107 at 24–25.) In reply, Plaintiff reiterates Defendants have failed to identify any property that Plaintiff absconded or destroyed. (ECF No. 108 at 3.) Further, Plaintiff contends Defendants merely raised speculative conjecture in opposition to this portion of his Cross-Motion. (*Id.*)

In the Seventh Counterclaim, Defendants vaguely allege Trespass to Property. (ECF No. 82 (Countercls. ¶¶ 32–34).) Under New Jersey law, "a cognizable claim for trespass occurs 'when personal property, in the actual use of the owner, is injured or taken by a trespasser, so that the owner is deprived of the use of it.'" *Arcand v. Brother Int'l Corp.*, 673 F. Supp. 2d 282, 312 (D.N.J. 2009) (quoting *Luse v. Jones*, 39 N.J. 707, 709 (N.J. 1877)); *see Barrett Fin. of N. Jersey, LLC v. Creative Fin. Grp. of N.J.*, Civ. A. No. 13-5621, 2018 WL 3546196, at *8 n.9 (D.N.J. July 24, 2018) ("A trespass to chattel may be committed by 'intentionally (a) dispossessing another of the chattel, or (b) using or intermeddling with a chattel in the possession of another.'" (quoting *Exxonmobil Oil Corp. v. Wakile & Sons, Inc.*, Civ. A. No. 09-01265, 2009 WL 3818151, at *3 (D.N.J. Nov. 13, 2009))). As Defendants do not assert they have been deprived of using the confidential and proprietary information at issue, the Court finds basis to grant summary judgment in favor of Plaintiff on Defendants' Seventh Counterclaim. *See Ferring Pharms. Inc., v. Watson Pharms., Inc.*, Civ. A. No. 12-cv-05824, 2014 WL 12634303, at *6 (D.N.J. Aug. 4, 2014) (holding dismissal of a claim for trespass to chattels, which alleged computer password evasion and improper obtainment of a copy of a webcast seminar, was proper because pleading party had failed to allege the deprivation element).

Further, Courts in this District have applied the Restatement (Second) of Torts, which provides "like conversion, trespass to chattels requires tangible personal property over which one can have physical control." *Barrett Fin.*, 2018 WL 3546196, at *11; *see also iPurusa, LLC v. Bank*

*of N.Y. Mellon Corp.*, Civ. A. No. 22-966, 2023 WL 3072686, at \*10 (D.N.J. Apr. 25, 2023) (quoting *Barrett Fin.*, 2018 WL 3546196, at \*11)). Here, Defendants' Counterclaim for Trespass to Property also fails because the alleged confidential and proprietary information at issue, including price lists and customer lists, is not tangible property.[24] *See Bellak v. Wells Fargo & Co.*, Civ. A. No. 17-2757, 2017 WL 6496563, at \*5 (D.N.J. Dec. 19, 2017) (citing *Mu Sigma, Inc. v. Affine, Inc.*, Civ. A. No. 12-1323, 2013 WL 3772724, at \*11 (D.N.J. July 17, 2013) ("[C]lient lists, pricing information and the like . . . are not considered tangible objects for the purposes of conversion.")); *Barrett Fin.*, 2018 WL 3546196, at \*11 (holding defendant was entitled to summary judgment on plaintiff's trespass to chattels claim because data files are intangible); *iPurusa*, 2023 WL 3072686, at \*10 (finding computer software is not tangible property in the context of a trespass to chattels claim). Accordingly, the Court finds the portion of Plaintiff's Cross-Motion seeking summary judgment on Defendants' Seventh Counterclaim for Trespass to Property is granted.

### 6.     Summary Judgment in Favor of Plaintiff on Defendants' Counterclaim for Violation of the NJTSA (Eighth Counterclaim) Is Not Warranted

Plaintiff argues Defendants' claim under the New Jersey Trade Secrets Act fails because Defendants have not provided evidence of Plaintiff misappropriating trade secrets from Millers of Wyckoff and/or YourLifeRx. (ECF No. 102-4 at 6.) In opposition, Defendants assert they have set forth genuine issues of material fact as to their claim under the New Jersey Trade Secrets Act

---

[24] The Court is not persuaded by Defendants' reliance on *Capanna v. Tribeca Lending Corp.*, Civ. A. No. 06-5314, 2009 WL 900156, at \*10 (D.N.J. Mar. 31, 2009). (ECF No. 107 at 24–25.) In *Capanna*, the Court found summary judgment was appropriate on a defendant/counterclaimant employer's claim for "trespass" because the plaintiff/counterclaim-defendant's removal of a loan application file that she was assigned to overwrite violated a confidentiality agreement. 2009 WL 900156, at \*10. Although the facts of *Capanna* are analogous, the Court notes no other Courts in this District have cited to or adopted this particular holding.

because the record demonstrates Plaintiff misappropriated YourLifeRx and Millers of Wyckoff's confidential, proprietary, and trade secret information. (ECF No. 107 at 25.) Defendants argue the information Plaintiff took is entitled to protection as confidential and proprietary property even if the Court were to find the information does not rise to the level of a trade secret. (*Id.* at 29.) In reply, Plaintiff submits Defendants have failed to identify trade secrets or the transmission of any information from Millers of Wyckoff and/or YourLifeRx to any other entity such as Medicos. (ECF No. 108 at 4.) Plaintiff submits Defendants "speculate rampantly about Plaintiff passing along Miller's proprietary information, and their pleadings make frequent allusions to such conduct, but they have been unable to point to a single instance." (*Id.*)

The NJTSA prohibits the "[a]ctual or threatened misappropriation" of a "trade secret." N.J. Stat. Ann. § 56:15-3. A "trade secret" is defined as "information" that:

> (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use; and
>
> (2) Is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

N.J. Stat. Ann. § 56:15-2. "Misappropriation" of a trade secret includes:

> (1) Acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means; or
>
> (2) Disclosure or use of a trade secret of another without express or implied consent of the trade secret owner by a person who:
>
> (a) used improper means to acquire knowledge of the trade secret; or
>
> (b) at the time of disclosure or use, knew or had reason to know that the knowledge of the trade secret was derived or acquired through improper means; or

46

> (c) before a material change of position, knew or had reason to know that it was a trade secret and that knowledge of it had been acquired through improper means.

*Id.* The NJTSA also provides "[a] person who misappropriates a trade secret shall not use as a defense to the misappropriation that proper means to acquire the trade secret existed at the time of the misappropriation." N.J. Stat. Ann. § 56:15-5.

In New Jersey, "customer lists . . . have been afforded protection as trade secrets." *Lamorte Burns & Co., Inc. v. Walters*, 770 A.2d 1158, 1166 (N.J. 2001) (internal citations omitted). "Where there is either a post-employment restrictive covenant or where the customer lists are confidential and thus a trade secret, customer lists may be protected even after employment is terminated." *AYR Composition, Inc. v. Rosenberg*, 619 A.2d 592, 597 (N.J. Super. Ct. App. Div. 1993) (citing *United Bd. & Carton Corp. v. Britting,* 160 A.2d 660 (N.J. Super. Ct. App. Div. 1960), *certif. denied,* 164 A.2d 379 (1960)). "[T]he names and addresses of its customers 'are not open to and ascertainable by everyone; they are the private information and property of the company." *AYR Composition, Inc.*, 619 A.2d at 597.

Here, the Court finds there is a genuine dispute as to whether Plaintiff's actions violated the NJTSA. The Court notes the following facts and circumstantial evidence: Plaintiff formulated pricing policies and generated lists of potential doctors and physicians (ECF No. 99-1 ¶ 17 (citing Claude Thomas Dep. 49:9–51:3)); Plaintiff sent Millers of Wyckoff's doctor list to his personal e-mail (ECF No. 107-5 ¶ 10 (citing Jan. 3, 2019 Correspondence)); Plaintiff received an e-mail from Mr. Bucher with a link to YourLifeRx's compounding price list (ECF No. 107-5 ¶ 20 (citing Claude Thomas Dep. 119:20–120:2; May 17, 2019 Correspondence from Mr. Bucher)); Plaintiff received an e-mail from Ms. Gruenberg which contained an attachment of a price list for ED medication (ECF No. 107-5 ¶ 22 (citing Claude Thomas Dep. 124:9–16; May 17, 2019

Correspondence from Ms. Gruenberg); Millers of Wyckoff and YourLifeRx's files were found on

Jiffy Script Rx's database (ECF No. 107-5 ¶¶ 30–31 (citing Aug. 23, 2019 Correspondence));

Plaintiff sent a fax to a physician's office on behalf of Medicos which included a price list he had

"created" (ECF No. 107-5 ¶¶ 36, 38 (citing Oct. 2019 Fox Cover Sheet; Syed Hussaini Dep. 114:8–

116:4)); the Employee Handbook contains a relevant confidentiality agreement and Plaintiff

signed this confidentiality agreement (ECF No. 99-1 ¶ 9 (citing Claude Thomas Dep. 94:9–96:5;

the Employee Handbook's Signature Page)).

Based on these facts, the Court finds there is ample factual support for Defendants' Eighth

Counterclaim to survive summary judgment because a reasonable factfinder could find Plaintiff

misappropriated trade secrets in violation of the NJTSA. *See Lamorte Burns*, 770 A.2d at 1166;

*AYR Composition, Inc.*, 619 A.2d at 597. Accordingly, the portion of Plaintiff's Cross-Motion

seeking summary judgment on Defendants' Eighth Counterclaim is denied.

### 7. Summary Judgment in Favor of Plaintiff on Defendants' Counterclaims for Violation of the NJCROA (Ninth Counterclaim) and the CFAA (Tenth Counterclaim) Is Warranted

As to the Ninth and Tenth Counterclaims, Plaintiff asserts Defendants' Ninth Counterclaim

under the NJCROA fails because Defendants have not set forth the statutory elements required to

establish they were damaged in business or property. (ECF No. 102-4 at 7.) Plaintiff also contends

Defendants' Tenth Counterclaim under the CFAA cannot be established because Plaintiff was

never party to a confidentiality agreement and there is no evidence Plaintiff suffered damages or

impairment to a computer or computer system. (*Id.* at 8.)

In opposition, Defendants submit there is sufficient evidence for Defendants' Ninth

Counterclaim to proceed because: (1) under the NJCROA, a defendant is liable for "purposeful[ly]

and knowing[ly]" removing or destroying computer data (ECF No. 107 at 29–30 (citing N.J. Stat.

Ann. § 2A:38A-1, *et seq.*) (alteration in original)); and (2) "the record evidence demonstrates that Plaintiff utilized the information he stole to compete against Defendants in direct violation of the confidentiality agreement between the parties" (*id.* at 30). Defendants assert summary judgment as to the Tenth Counterclaim must be denied because Plaintiff has admitted he had access to Defendants' computer system and the record establishes Plaintiff utilized the information he stole to compete against Defendants in violation of the confidentiality agreement between the parties. (*Id.* at 29–30.)

In reply, Plaintiff reiterates Defendants have not set forth the statutory elements contained in N.J. Stat. Ann. § 2A:38A-3. (ECF No. 108 at 5.) As to the CFAA, Plaintiff argues "Defendants have never, in any pleading even remotely suggested that any of Plaintiff's alleged misconduct involved harm of any kind to any computer, computer system, computer network or software" and that there is no evidence of monetary damages. (*Id.* at 5.)

"The New Jersey Computer Related Offenses Act makes it unlawful to alter, damage, access, or obtain data from a computer without authorization." *In re Nickelodeon Consumer Priv. Litig.*, 827 F.3d 262, 277 (3d Cir. 2016) "The CFAA is a criminal statute which penalizes a range of computer offenses and also provides a civil remedy in certain circumstances to persons who suffer damage or loss as a result of a violation of its provisions." *Christie v. Nat'l Inst. Of Newman Stud.*, Civ. A. No. 16-6572, 2019 WL 1916204, at *5 (D.N.J. Apr. 30, 2019) (internal citations omitted). "[T]he CFAA prohibits the knowing or purposeful unauthorized access to, or transmission of, protected computer data." *Id.* (citing 18 U.S.C. § 1030(a); *Grant Mfg. & Alloying, Inc. v. McIlvain*, 499 F. App'x 157, 159 (3d Cir. 2012)). Under the CFAA, a private cause of action is also permitted. *See* 18 U.S.C. § 1030(g); *Grant Mfg.*, 499 F. App'x at 159.

"An employee accesses a computer without authorization when he has no rights, limited or

otherwise, to access the computer in question." *Synthes, Inc. v. Emerge Med., Inc.*, Civ. A. No. 11-1566, 2012 WL 4205476, at *16 (E.D. Pa. Sep. 19, 2012) (internal citation and quotations omitted). The Ninth Circuit has held "an employer gives an employee 'authorization' to access a company computer when the employer gives the employee permission to use it." *LVRC Holdings LLC v. Brekka*, 581 F.3d 1127, 1133 (9th Cir. 2009).

"Importantly, an employee who accesses a computer by the terms of his or her employment is 'authorized' to use that computer for purposes of the CFAA even if the purpose in doing so is to misuse or misappropriate the information." *Christie*, 2019 WL 1916204, at *5 (citing *Bro-Tech Corp. v. Thermax, Inc.*, 651 F. Supp. 2d 378, 407 (E.D. Pa. 2009); *see also Diamond Power Int'l, Inc. v. Davidson*, 540 F. Supp. 2d 1322 (N.D. Ga. 2007); *Brett Senior & Assocs., P.C. v. Fitzgerald*, Civ. A. No. 06-1412, 2007 WL 2043377 (E.D. Pa. Jul. 13, 2007); *Lockheed Martin Corp. v. Speed*, Civ. A. No. 05-31, 2006 WL 2683058 (M.D. Fla. Aug. 1, 2006); *Int'l Ass'n of Machinists & Aero. Workers v. Werner-Matsuda*, 390 F. Supp. 2d 479, 495 (D. Md. 2005); *Shamrock Foods Co. v. Gast*, 535 F. Supp. 2d 962, 965 (D. Ariz. 2008)). "In other words, what one intends to do with information taken from a computer is irrelevant if the individual was given computer access to that information." *Christie*, 2019 WL 1916204, at *5 (citing *QVC, Inc. v. Resultly, LLC*, 159 F. Supp. 3d 576, 595 (E.D. Pa. 2016)).

The Third Circuit has noted "courts seem to have interpreted the [NJCROA] in harmony with its federal counterpart [the CFAA]." *In re Nickelodeon*, 827 F.3d at 278; *Mu Sigma,* 2013 WL 3772724, at *9–10 (dismissing claims under the NJCROA and the CFAA for identical reasons); *Christie*, 2019 WL 1916204, at *5–11 (granting summary judgment under the state and federal computer offenses statutes for nearly identical reasons). Therefore, the Court will concurrently address the Ninth and Tenth Counterclaim.

Here, the Court finds Defendants have failed to establish a genuine issue of material fact as to Plaintiff's authorization. Defendants do not assert Plaintiff was unauthorized to access YourLifeRx or Millers of Wyckoff's client list, compounding price list, or other relevant files during his employment. Instead, it appears Defendants' contention is that Plaintiff was unauthorized to utilize his e-mail for receiving these relevant files during his employment. "The CFAA does not protect the unauthorized access of e-mails. Rather, . . . the statute only protects the unauthorized access of computers, not stored electronic communication in the form of e-mails." *Christie*, 2019 WL 1916204, at *6. *See Owen v. Cigna*, 188 F. Supp. 3d 790, 793 (N.D. Ill. 2016) ("[T]he CFAA is aimed at unauthorized access to computers, not unauthorized access to web-based accounts."); *see also Sloan Fin. Grp., LLC v. Coe*, No. 09-2659, 2010 WL 4668341, at *4 (D.S.C. Nov. 18, 2010) ("[W]hether or not it was a violation of company policy, e-mailing the spreadsheets did not involve accessing a computer 'without authorization' under the CFAA."). Based on the foregoing, the Court finds summary judgment in favor of Plaintiff on Defendants Ninth and Tenth Counterclaims is warranted because Plaintiff did not engage in unauthorized access of YourLifeRx or Millers of Wyckoff's computers, client list, compounding price list, or other relevant files.

## IV.   CONCLUSION

For the reasons set forth above, Defendants' Motion for Summary Judgment (ECF No. 99) is **GRANTED** and Plaintiff's Cross-Motion for Summary Judgment (ECF No. 102) is **GRANTED IN PART** and **DENIED IN PART**. An appropriate Order follows.

*/s/ Brian R. Martinotti*
**HON. BRIAN R. MARTINOTTI**
**UNITED STATES DISTRICT JUDGE**

Dated: February 5, 2024